UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Appellee,

v.                          Case No. 15-5109

LINDSEY KENT SPRINGER,       (N.D.Okla. 09-CR-043)

     Appellant.

APPELLANT'S OPENING BRIEF

By:  Lindsey Kent Springer
     Reg. # 02580-063
     Federal Satellite Low-La Tuna
     P.O. Box 6000
     Anthony, New Mexico 88021

-i-

## TABLE OF CONTENTS

APPELLANT'S OPENING BRIEF.....................................................1

1.  Statement of the Case...................................................1

2.  Statement of the Facts Relevant to the Issues for Review..............4

    I.  Standard of Review................................................4

        (a)  The Facts Relevant to Thomas Scott Woodward's Fraud upon the
             Court.......................................................4

          (i)  Facts obtained through Freedom of Information Act...........6

        (b)  The Facts Relevant to Charles A. O'Reilly's Frauds upon the
             Court.......................................................9

          (i)  Facts obtained through Freedom of Information Act..........10

        (c)  The Facts Relevant to Kenneth P. Snoke's Fraud upon the Court..14

          (i)  Facts obtained through Freedom of Information Act..........15

        (d)  The Facts Relevant to Jeffrey A. Gallant's Frauds upon the
             Court......................................................16

          (i)  Facts obtained through Freedom of Information Act..........16

        (e)  The District Court has made Three Statements in Three Orders...18

3.  Statement of the Issues..............................................19

        (a)  First Issue:

             Is the argument that various frauds upon the Court that involve
             the Courts Article III, § 2 judicial power and authority, with-
             out which the District Court's Article III, § 2 judicial power
             and authority either never existed as a live case or controversy,
             or had become mooted after the case began, and where the lawyers
             representing the United States of America lacked standing or
             authority to do so, a frivolous argument?.....................21

        (i)  Appellant's argument that the Court's Article III, § 2 Jud-
             icial Power either never existed, or had ceased upon Mr.
             O'Meilia's resignation, where neither Snoke, O'Reilly, or
             Woodward, were authorized to represent the United States of
             America, and where Snoke, O'Reilly, and Woodward's lack of
             Article III standing had been disguised through several frauds
             upon the Court, is not a Frivolous Argument as the District
             Court decided............................................23

-ii-

TABLE OF CONTENTS (con'td)

(A) Persons representing the authority of the United States
    in an Article III Court, including a criminal case,
    must be holding an Article II, § 2, Cl. 2 appointment,
    established by law of Congress, as an Officer of the
    United States, in order to establish standing to pro-
    secute any Citizen in the name and benefit of the United
    States...............................................23

    (1) Even though the cases establish there isn o presum-
        ption in favor of assuming a party has standing
        to bring a case or controversy, or maintain one
        that has become moot, and that the question of
        standing an mootness are subject to examination at
        any stage, there is also a rebuttable presumption
        or regularity supporting the official acts of
        persons claiming to be Officers of the United
        States...........................................27

    (2) The required appointments and offices that Congress
        established by law that Snoke, O'Reilly, Wood-
        ward, Gallant, Mr. Williams, and as inferred upon
        Mr. O'Meilia, said they were duly appointed to
        hold but which the evidence clearly shows other-
        wise.............................................28

        (a) Section 541.................................30

        (b) Section 542.................................31

        (c) Section 543.................................31

        (d) Section 544.................................32

        (e) Section 546.................................32

        (f) Section 3345(a)(1)..........................33

        (g) Tenure and Term of Office Holders under
            28 U.S.C. §§ 541, 542, 543, 546(a) and (c)(2),
            546(d), and 5 U.S.C. § 3345(a)(1) and 3346..33

        (h) Snoke held no appointment by Attorney General
            Eric H. Holder, Jr.........................34

        (i) O'Reilly held none of the appointments he
            purported to hold..........................34

        (j) Woodward held none of the appointments he
            purported to hold..........................35

        (k) Gallant held no appointment by Attorney
            General Eric H. Holder, Jr.................37

-iii-

TABLE OF CONTENTS (con'td)

(3) Snoke, O'Reilly, Woodward, and Gallant, must
be appointed according to Federal Law and
the Constitution.................................37

(4) Without standing to represent the United States
of America, and statutory authority to do so, the
case must be dismissed..........................38

(5) A Judgment procured by Fraud upon the Court,
including that Fraud that goes to the Jurisdict-
ion of the Court, is never final................40

    (a) Fraud upon the Court.........................41

(6) Jurisdiction of the Court to which the Fraud
was schemed upon is the proper Court to address
the Fraud.......................................43

(7) 28 U.S.C. § 2255 motion procedure only applied to
final judgment and the April 28, 2010 Judgment is
not final due to the undisputed Frauds upon the
Court to which it relies........................44

(8) The previously rejected arguments by the District
Court...........................................45

(9) The District Court's "Frivolous" argument deter-
mination is clearly erroneous...................49

4  Do you think the district court applied the wrong law?  If so, what law
do you want applied?....................................50

5. Did the district court incorrectly decide the facts?  If so, what facts?50

6. Did the district court fail to consider the important grounds for relief?
If so, what grounds?...................................50

7  Do you feel that there are any other reasons why the district court's
judgment was wrong? If so, what?.......................51

8. What action do you want this Court to take in your case?...............51

9. Do you think the court should hear oral arugment in this case? If so, why?
....................................................51

Certificate of Service.................................52

Certificate of Compliance..............................52

Declaration of Mailing.................................52

APPELLANT'S OPENING BRIEF

1. Statement of the Case.

The frauds upon the Court have roots planted prior to the case. On January 20, 2009, President Obama took over the Exective authority of the United States. See Article II of the Constitution. On or about January 23, 2009, Eric H. Holder Jr. ("Mr. Holder") was appointed as President Obama's Attorney General pursuant to 28 U.S.C. § 503. In January, 2009, David E. O'Meilia ("Mr. O'Meilia") remained the United States Attorney for the Northern District of Oklahoma and had been so since 2001 under 28 U.S.C. § 541. On March 10, 2009, while the President, Mr. Holder, and the Governor from the State of Oklahoma and Oklahoma's two Republican Senators could not agree on the replacement for Mr. O'Meilia and the persons in his office, Kennetn P. Snoke ("Snoke") and Charles A. O'Reilly ("O'Reilly") drafted, presented, obtained, signed, and filed a Grand Jury indictment naming Appellant in the Northern District of Oklahoma's Clerk's Office under the authority of the United States of America. Doc. 2. Snoke signed the indictment as an Assistant United States Attorney under Mr. O'Meilia, pursuant to Federal Rules of Criminal Procedure Rule 7(c)(2009) and 28 U.S.C. §§ 542(a) and 547(1), and O'Reilly signed as a Trial Attorney for the Department of Justice, Federal Law unidentified and unknwn.

While Appellant had several Motions to Dismiss all Six Counts of the indictment, see Docs. 51 through 66, 74, 77, 82, and 90, Mr. O'Meilia resigned his § 541(a) office effective June 28, 2009, after the President had refused to appoint a United States Attorney for the Northern District of Oklahoma. See Doc. 605, Exhibit 1, pgs. 1,2,3.

Beginning June 28, 2009, Thomas Scott Woodward ("Woodward") began to purportedly hold office of "Acting United States Attorney" for the Northern District of Oklahoma first, pursuant to 28 C.F.R. § 0.136(2009), then that theory

1

changed to 5 U.S.C. § 3345(a)(1). See beginning Doc. 94. After Mr. O'Meilia resigned, and having received no appointment under § 542(a) from Mr. Holder, Snoke continued in the case as an Assistant United States Attorney under Woodward while O'Reilly changed his office from Trial Attorney to "Special Assistant United States Attorney ("SAUSA") pursuant to 28 U.S.C. §§ 515(a) and 543(a). See Docs. 104, 138, and 277 for examples.

After Jury Trial with Snoke and O'Reilly, under Woodward as "Acting United States Attorney," on January 27, 2010, Woodward, Snoke, and O'Reilly, declared Woodward received appointment from Mr. Holder on January 21, 2010, and was sworn in under 28 U.S.C. §§ 546(a) and (c)(2) and 544 but failed to identify the term of office. Doc. 292, pg. 1 (n.1)

Beginning January 21, 2010 to May 24, 2010, which is 123 days, Woodward purported to be the Northern District of Oklahoma's United States Attorney pursuant to 28 U.S.C. § 546(a) and (c)(2). During this time period the District Court denied dismissal on grounds Woodward was not authorized as Acting United State Attorney under 28 C.F.R. § 0.136, and that Snoke and O'Reilly were properly under Woodward's authority as both Acting and United States Attorney. Docs. 293, 312.

On April 28, 2010, Judgment was entered in favor of the United States of America based upon numerous frauds upon the Court. Doc. 337. On May 24, 2010, Woodward convinced Judge Claire V. Eagan to appoint him under 28 U.S.C. § 546(d). Doc. 605, Exhibit 4. Appellant appealed the Judgment and the Tenth Circuit affirmed on October 26, 2011. Doc. 460. Writ of Certiorari was denied on June 4, 2012. Doc. 468. On August 7, 2012, Danny C. Williams Sr. ("Mr. Williams") was appointed to replace Mr. O'Meilia under 28 U.S.C. § 541(a). See Doc. 605, pg. 1, ¶ 2 and Exhibit 1, pgs. 1,2,3

A Motion was timely filed continuing the criminal case under 28 U.S.C. §

2

2255. Docs. 472-475. A writ of mandamus was authorized by the Chief Judge
on September 10, 2013, in the Tenth Circuit, case # 13-5113, to which In Forma
Pauperis status was granted and the Writ was denied on September 18, 2013,
finding another rememdy remained available. The criminal case motion under
§ 2255 was denied on August 22, 2014. Docs. 584, 585. The Tenth Circuit denied
issuing a Certificate of Appèalability on February 25, 2015 in 14-5109. Doc.
599.

On October 13, 2015, Appellant filed a Motion to Enjoin Enforcement of the
April 28, 2010 judgment based upon several frauds upon the Court by Snoke,
O'Reilly, Woodward, Jeffrey A. Gallant ("Gallant"), current United States Att-
orney Mr. Williams and inferred upon the conduct of Mr. O'Meilia. Doc. 604.
Appellant supported his Motion with a Declaration and 28 Exhibits showing the
frauds mostly obtained from Mr. Williams' agency and the Department of Justice.
Doc. 605. The records provide clear and convincing evidence that neither Snoke,
O'Reilly, Woodward, or Gallant, held the appointments to office of the United
States they purported to hold which were each frauds upon the Court that go to
the Jurisdiction of the Court and its judicial machinery and process.

Appellant showed at least Thirteen (13) frauds upon the Court that rendered
the April 28, 2010 Judgment non final based upon those Frauds upon the Court.[1]

Seven Days later, and without requiring any response, the Court denied
the Motion. Doc. 606. Notice of Appeal was timely filed. Doc. 607. Appellant
movd the District Court for In Forma Pauperis status which was denied on Dec-
ember 10, 2015. Doc. 612. A Motion to Proceed In Forma Pauperis is fled sim-
ultaneously with this Opening Brief.

---

1. The Clerk's Office Docketed Appellant's Declaration as a Memorandum at Doc.
   605. Doc. 605 is clearly not a memorandum, but rather, a Declaration. Both
   the District and Appellate Clerks informed Appellant to clearly note it.

3

**2.  Statement of the Facts Relevant to the Issues for Review.**

  I.  Standard of Review:

       The standard of review is not clearly proscribed.  To determine whether
an argument is legally frivolous is a legal issue that is reviewed de novo.
U.S. v. Valdez Hocker, 333 F.3d 1206, 1209(10th Cir. 2003).  Fraud upon the
Court involving the Court's Article III Judicial Jurisdiction and Power is
also reviewed de novo.  Kelly v. Michaels, 59 F.3d 1055, 1057(10th Cir. 1995)
Both the District Court and this Court have an independent duty and power in
equity to enjoin enforcement of any judgment that was obtained fraudulently.
Haszel-Atlas Glass, Co., v. Hartford Empire Co., 322 U.S. 238, 250(1944). See
also Bulloch v. U.S., 763 F.2d 1115, 1121(10th Cir. 1985)(en banc); And see
United States v. Throckmorton, 98 U.S. (8 Otto 61)(1878)

       (a)  The Facts Relevant to Thomas Scott Woodward's Frauds Upon the Court.
1.  The Grand Jury Indictment is dated March 10, 2009 and is signed by Snoke
and O'Reilly underneath the printed name of Mr. O'Meilia.  Doc. 2, pg. 14
2.  At the time of the indictment, Mr. O'Meilia was the Northern District of
Oklahoma's United States Attorney.  Id.
3.  Mr. O'Meilia resigned his Article II, § 2, Cl. 2 office on June 28, 2009.
Doc. 604, pg. 3, ¶ 14
4.  On June 28, 2009 Woodward purported to hold the Article II, § 2, Cl.2
office of Assistant United States Attorney under Mr. O'Meilia, pursuant to 28
U.S.C. § 542(a), "First Assistant" under 5 U.S.C. § 3345(a)(1), and as such,
Woodward purported authorization under either 28 C.F.R. § 0.136, or § 3345(a)(1)
to hold office as "Acting United States Attorney" for 210 days. Doc. 604, pg. 4
5.  On January 27, 2010 (Doc. 292), which was after Jury Trial but before sent-
encing, Woodward, Snoke, and O'Reilly, declared that Woodward was sworn in as
the Northern District of Oklahoma's United States Attorney under 28 U.S.C. §
546(a), after being appointed by the Attorney General Eric H. Holder, Jr.

See Doc. 292, pg. 1(n.1)

6. Appellant was sentenced on April 23, 2010 with formal Judgment being recorded on April 28, 2010. Doc. 337.

7. On May 24, 2010, United States District Judge Claire V. Eagan, issued an Order appointing Woodward as the Northern District of Oklahoma's United States Attorney pursuant to the authority of 28 U.S.C. § 546(d). Doc. 605, pg. 2 and Exhibit 4, pg. 1 of 1.

8. On June 8, 2010, the District Court issued an order terminating Snoke's representation due to his purported retirement. Docs. 373, 374

9. On September 9, 2010, Gallant entered his appearance on behalf of the United States of America and as a purported "Assistant United States Attorney" appointed pursuant to 28 U.S.C. § 542(a) and a delegate of Woodward. Doc. 421

10. Woodward, as United States Attorney purportedly under § 546(d), O'Reilly, as a purported SAUSA, and Gallant, as a purported AUSA, continued to represent the standing of the United States of America until August, 2012. Doc. 604, pg. 5, ¶ 31, and Doc. 605, pg. 1 and Exhibit 1

11. What changed in August, 2012 was that Mr. Williams was appointed as the Northern District of Oklahoma's United States Attorney pursuant to 28 U.S.C. § 541(a), thereby terminating the purported § 546(d) appointment by Judge Eagan of Woodward. Id.

12. By General Order dated January 8, 2014, Chief District Judge Gregory K. Frizzell authorized Woodward, as AUSA, to replace Phil Pinnell, in 3,516 cases to which Pinnell represented the United States of America. See Appendix 1 to this opening brief.

13. Woodward continues to this day representing to the public and the District Court that he is an Officer of the United States under § 542(a) to which is simply false and one of the many ongoing Frauds upon the Court.

     (i)  Facts obtained through Freedom of Information Act

14.  On October 9, 2013, Appellant requested from the Department of Justice

Freedom of Information Act Unit("DOJ/FOIA")(28 CFR § 16.3) the following

information and documentation:

> "in obtaining information and documents pertaining to the appointment of
> Thomas Scott Woodward as the United States Attorney for the Northern
> Judicial District of Oklahoma...between June 1, 2009 through August 2,
> 2012."

Doc. 604, pg. 6; Doc. 605, pg. 3 and Exhibit 7, 1 of 1.

15.  DOJ/FOIA has never responded to this FOIA request and the time period to

do so has long expired.  Doc. 605, pg. 3.

16.  On October 9, 2013, Appellant also requested from the Executive Office

for United States Attorneys the same exact information as described above

in the FOIA request to DOJ/FOIA.  See Doc. 604, pg. 6; 605, pg. 3 and Exhibit 8.

17.  On September 17, 2014, the Executive Office for United States Attorneys

("EOUSA") replied and after searching all records located only the 28 U.S.C.

§ 544 oath of office signed by Woodward on May 25, 2010, which is the day after

Judge Eagan issued her  appointment order of Woodward under 28 U.S.C. § 546(d).

18.  EOUSA could locate no other public record of Woodward being appointed to

the office of United States Attorney prior to May 25, 2010.  Doc. 605, pg. 3-4

and Exhibit 9, pgs. 1 of 4 and 4 of 4.  The FOIA No. is 2014-00169.

19.  On December 31, 2014, Appellant made a FOIA request to Williams' agency,

a separate record keeper under FOIA, and agency, seeking:

> "information and any documentation pertaining to or showing the authoriz-
> ation and/or appointment of Thomas Scott Woodward to represent the United
> States of America pursuant to 28 U.S.C. §§ 542, 546(a), and 5 U.S.C. §
> 3345(a)(1)...between January 1, 2009 through January 1, 2013..."

See Doc. 605, pg. 4 and Exhibit 10, pg. 1 of 1

20.  On July 23, 2015, the EOUSA, on behalf of Williams' agency, replied to

Appellant's December 31, 2014 FOIA request listed in paragraph 19 above, located

only the one May 25, 2010 oath Woodward signed after Judge Eagan appointed him

under 28 U.S.C. § 546(d).  See Doc. 605, pg. 4 and Exhibit 2, pgs. 1 of 5

and 4 of 5.

21.  The July 23, 2015 reply states in relevant part:

> "To provide you with the greatest degree of access authorized by the
> Freedom of Information Act and Privacy Act, we have considered your request
> in light of the provisions of both statutes.  ALL THE RECORDS YOU SEEK ARE
> BEING MADE AVAILABLE TO YOU.  We have processed your request under the
> Freedom of Information Act and are making all records required to be
> released, or considered appropriate for release as a matter of discretion,
> available to you.  THIS IS A FULL RELEASE OF 2 PAGES."

Doc. 605, pg. 4 and Exhibit 2, pg. 1 of 5.

22.  The July 29, 2015 letter from EOUSA, Doc. 605, Exhibit 3, supplementing

EOUSA's July 23, 2015 initial reply, did not involve Woodward.

23.  On July 30, 2015, Linda M. Richardson, an Administrative Services Assist-

ant for the Department of Justice, Executive Office for United States Attorneys,

serving as a liaison for FOIA/PA staff for EOUSA, declared under penalty of

perjury in Springer v. United States Attorney, et al., 15-CV-142, that she is the

person assigned to Appellant's December 31, 2014 FOIA request involving Wood-

ward's appointments to office under 28 U.S.C. § 542, 546(a), and 5 U.S.C. §

3345(a)(1), and FOIA # 2015-01085 and FOIA # 2014-00169 (Appellant's October 9,

2013 FOIA request involving Woodward as United States Attorney), and that she

received Appellant's December 31, 2014 FOIA request involving Woodward on

January 9, 2015.  See Doc. 605, pg. 9 and Exhibit 28, pg. 2 of 5

24.  Ms. Richardson's Declaration identified Thomas Scott Woodward and referred

the Court to an "accurate statement of the FOIA request content." Id.

25.  Ms. Richardson also declares that Appellant's October 9, 2013 FOIA request

sought "information and any documents pertaining to the appointment of Thomas

Scott Woodward as the United States Attorney for the Northern District of Okla-

homa[.]" and referred to Court to the October 9, 2013 FOIA request "for a true

and accurate statement of the FOIA request content" in No. 2014-00169.  Doc.

605, pg. 9 and Exhibit 28, pg. 3 of 5.

7

26.  Ms. Richardson declared that she searched "eOPF," "DOJ's Microsoft Out-

look Office, Global Address Book, Global Address Listings (GAL), and after

that thorough search she could only locate the May 25, 2010 oath of Woodward

dated May 25, 2010. Doc. 605, pg. 9 and Exhibit 28, pg. 3 of 5, ¶¶ 10-12

27.  Ms. Richardson declared that she searched the offices of 94 United States

Attorneys and that of EOUSA and her search was "reasonably calculated to uncover

ALL RECORDS RESPONSIVE TO [Appellant's] requests." Doc. 605, pg. 9 and Exhibit

28, pg. 4 of 5, ¶¶ 16,17

29.  Ms. Richardson also declared:

> "I am not aware of any other locations within EOUSA where any other records
> that might be responsive to plaintiff's requests are likely to be located."

Id. at ¶ 18

30.  And finally, Ms. Richardson declared:

> "I am not aware of any other method or means by which a further search
> could be conducted that would likely uncover additional responsive records."

Doc. 605, pg. 9 and Exhibit 28, pgs. 4 of 5 and 5 of 5.

31.  On December 31, 2014, Appellant made a FOIA request to Williams' agency

seeking:

> "information and any documents pertaining to or showing Thomas Scott Wood-
> ward as the 'First Assistant' to David E. O'Meilia, pursuant to 5 U.S.C.
> § 3345(a)(1), from or on January 1, 2009 through June 28, 2009.  To help
> you in gathering this information I can provide to you that the Form 50-A
> and 50-B, entitled 'Notification of Personnel Action,' may contain the
> information I seek."

Doc. 605, pg. 4 and Exhibit 11, 1 of 1

32.  Appellant explained the time period was between October 6, 2005 through

October 4, 2009.  Id.

33.  On July 23, 2015, the EOUSA, on behalf of Williams' agency, replied that

no such record showing Woodward as Mr. O'Meilia's "First Assistant" under 5

U.S.C. § 3345(a)(1) could be located.  Doc. 605, pg. 4 and Exhibit 2, pg. 1 of

5.

34.  The July 29, 2015 letter from EOUSA, Doc. 605, Exhibit 3 supplementing EOUSA's July 23, 2015 initial reply, did not involve Woodward.

35.  Ms. Richardson's July 30, 2015 Declaration in Springer v. United States Attorney, et al., 15-CV-142, explained the extent of her search of the records of 94 U.S. Attorney offices and EOUSA and could find no responsive record showing Woodward as Mr. O'Meilia's First Assistant. Doc. 605, pg. 9 and Exhibit 28

36.  Ms. Richardson declared, other than the oath Woodward signed after Judge Eagan appointed him under 28 U.S.C. § 546(d), that no other record showed Woodward being appointed by the Attorney General Eric H. Holder, Jr. or any other Attorney General, to the Article II, § 2, Cl. 2 office of Assistant United States Attorney under § 542(a), as Mr. O'Meilia's "First Assistant," prior to June 28, 2009 when O'Meilia resigned his office, or as a United States Attorney under 28 U.S.C. § 546(a) and (c)(2) as Woodward declared on January 27, 2010 he received on January 21, 2010. Doc. 605, pg. 9 and Exhibit 28, pgs. 1 to 5.

37.  On March 8, 2015, Appellant made a FOIA request to DOJ/FOIA seeking:

> "information and any documentation pertaining to or showing the authorization and/or appointment of Thomas Scott Woodward---Northern District of Oklahoma to represent the United States of America pursuant to 28 U.S.C. §§ 542, 546(a), and 5 U.S.C. § 3345(a)(1)...between January 1, 2009 through January 1, 2013."

38.  The DOJ/FOIA referral unit under 28 CFR § 16.3 refused to reply to Appellant's FOIA request dated March 8, 2015, and the time period to do so has long expired.  Doc. 605, pg. 4, ¶ 19.

   (b)  The Facts Relevant to Charles A. O'Reilly's Frauds upon the Court.

1.  The Grand Jury Indictment is signed by O'Reilly as a Trial Attorney with the Department of Justice. Doc. 2, pg. 14

2.  On June 28, 2009, O'Reilly changed his Office of the United States from Trial Attorney to "Special Assistant United States Attorney." See Docs. 94 and 104.

3.  On October 24, 2013, O'Reilly, Gallant, and Mr. Williams, declared that

9

O'Reilly had received an appointment on December 23, 2008 from Deputy Assist-

ant Attorney General John A Marrella pursuant to 28 U.S.C. § 515(a) and 28

CFR § 0.13(a).  Doc. 525, pg. 2; Doc. 604, pg. 5; Doc. 605, Exhibit 16, pg. 7

4.    While opposing Appellant's Motion to Strike, O'Reilly, Gallant, and Mr.

Williams also declared that Mr. O'Meilia appointed O'Reilly on January 5,

2009 as a Special Assistant United States Attorney for the Northern District

of Oklahoma under 28 U.S.C. § 543(a).  Doc. 525, pg. 2; Doc. 604, pg. 5.

5.    O'Reilly, Gallant, and Mr. Williams, also declared that Mr. O'Meilia's

§ 543 apointment was extended on January 4, 2010 by the Northern District of

Oklahoma's United States Attorney to O'Reilly. Doc. 525, pg. 2; Doc. 604, pg. 6

6.    O'Reilly, Gallant, and Mr. Williams, also declared that the January 4,

2010 extension of O'Meilia's January 5, 2009 appointment under § 543(a) was

extended again on January  4, 2011, and again on January  10, 2012. Doc. 525,

pg. 2; Doc. 604, pg. 6.  No name of the United States Attorney was provided.

7.    O'Reilly, Gallant, and Mr. Williams, also declared that Mr. Williams

extended the § 543 appointment on December 19, 2012. Doc. 525, pg. 2; Doc. 604,

pg. 6; see entire statement of Doc. 525, pg. 2 at Doc. 605, Exhibit 16, pg. 7

8.    In opposing Appellant's Motion for Discovery on the appointments of Wood-

ward, O'Reilly, and Snoke, O'Reilly, Gallant, and Williams opposed providing

Appellant with their various appointment letters and documents, arguing:

> "Mr. Springer's claims are barred by res judicata...and Mr. Springer's
> attempt to relitigate the validity of the appointments of the United
> States attorney warrants neither discovery nor the appointment of counsel."

Doc. 526, pg. 2; Doc. 604, pg. 6.

        (i)  Facts obtained through Freedom of Information Act

9.    On October 9, 2013, Appellant requested from DOJ/FOIA Unit the following

request:

> "obtaining information and any documents pertaining to the appointment of
> Charles A. O'Reilly as a "Special Assistant United States Attorney." Cal-
> ifornia Bar Association No. 160980...between June 1, 2009 through September

10, 2013."

Doc. 604, pg. 8; ¶ 49; Doc. 605, pg. 5, ¶ 20 and Exhibit 13, pg. 1 of 1

10.  DOJ/FOIA has never responded to this FOIA request and the time period to

do so has long expired. Doc. 604, pg. 8, ¶ 50; Doc. 605, pg. 5, ¶ 21

11.  On October 9, 2013, Appellant also requested from the EOUSA the same exact

information as described above in the FOIA request to DOJ/FOIA.  See Doc. 604,

pg. 8, ¶ 51; Doc. 605, pg. 5,  ¶ 22 and Exhibit 14, pg. 1 of 1

12.  EOUSA responded in a letter dated June 4, 2014 in FOIA # 2014-00473

identifying the request as "Appointment of SAUSA Charles A. O'Reilly/Personnel"

and replying that it appeared to EOUSA that O'Reilly was "no longer an employee"

and therefore his official file "is no longer maintained."  Doc. 604, pg. 8, ¶

52; Doc. 605, pg. 5, ¶ 23 and Exhibit 15, pg. 1 of 1.

13.  Appellant appealed the June 4, 2014 EOUSA response involving  O'Reilly's

no longer employed finding and showing that Mr. Williams, Gallant, and O'Reilly,

continued to represent O'Reilly as an Officer of the United States after June

4, 2014 and on July 10, 2014. See Doc 605, pg 5, ¶ 24 an Exhibit 16, pgs 1 of

12 and 10 to 12 of 12 which is Doc. 576 in part.

14.  On September 29, 2014, the Office of Information Policy affirmed EOUSA's

finding that O'Reilly was no longer employed as an Officer of the United States

under 28 U.S.C. § 543 as a Special Assistant United States Attorney. See Doc.

604, pg. 8, ¶ 53; Doc. 605, pg. 5, ¶ 25 and Exhibit 17.

15.  In the September 29, 2014 Appeal letter involving FOIA No. 2014-00473,

Sean R. O"Neill, as Chief of Administrative Appeal Staff, stated as the official

position of the United States:

> "I am affirming EOUSA's action on your request.  EOUSA informed you that
> it could locate no responsive records subject to the Freedom of Inform-
> ation Act in its files.  I have determined the EOUSA's action was correct
> and that it conducted an adequate, reasonable search for such records."

Id.

11

16.  Mr. O'Neill suggested Appellant submit a FOIA request to the Tax Division

in the name of Carmen M. Banerjee. Id.

17.  On December 31, 2014, Appellant made a FOIA request to Williams' agency

seeking:

> "information and any documentation pertaining to or showing the authoriza-
> tion and/or appointment of Charles A. O'Reilly to represent the United
> States of America pursuant to 28 U.S.C. §§ 542, 543, and 547(1)...between
> December 1, 2008 through January 1, 2015...in and for the Northern District
> of Oklahoma."

See Doc. 604, pg. 8, ¶ 54; Doc. 605, pg. 6, ¶ 26 and Exhibit 18.

18.  On July 23, 2015, in FOIA No. 2015-01085, EOUSA replied to Appellant's

December 31, 2014 FOIA to Williams' agency finding:

> "Please note.  There are no records located for Charles A. O'Reilly...
> or Kenneth Snoke because they are either no longer employees or were
> never employed by EOUSA."

See Doc. 604, pg. 8, ¶ 55; Doc. 605, pg. 6, ¶ 27 and Exhibit 2, pg. 1 of 5.

19.  EOUSA, on behalf of Williams, stated they had searched all the records

of the "various United States Attorneys" and that:

> "All of the records you seek are being made available to you."

Id.

20.  In a supplemental reply dated July 29, 2015, EOUSA provided a copy of

an oath affidavit O'Reilly may or may not have signed on January 5, 2009 in

Tulsa, Oklahoma.  See Doc. 604, pg. 8, ¶ 56; Doc. 605, pg. 6, ¶ 28 and Exhibit

3, pg  1 of 3 and 2 of 3.

21.  Ms. Richardson declared on July 30, 2015, in Springer v. United States

Attorney, et al., 15-CV-142, that she is familiar with Appellant's FOIA requests

involving O'Reilly's appointment to Office of the United States as a Special

Assistant United States Attorney in Nos. 2014-00473 and 2015-01085.  See Doc.

605, pg. 9, ¶ 46 and Exhibit 28, pg. 2 of 5

22.  Ms. Richardson declared:

12

"[Appellant] sought to obtain information and any documents that pertain to the appointment of Charles A. O'Reilly as a 'Special Assistant United States Attorney' during the period between June 1, 2009, and September 10, 2013."

See Doc. 605, pg. 9 ¶ 46 and Exhibit 28, pg. 3 of 5

23. Ms. Richardson again checked every available system and "was unable to

locate any information related to...Charles A. O'Reilly." Id. at 4 of 5

24. Ms. Richardson also declared how the January 5, 2009 oath affidavit with

O'Reilly's name on it was located:

"On July 23, 2015, my office contacted USA/NDOK staff to determine whether Appointment Affidavits existed for Mr. O'Reilly...After searching the records, a staff member from the SAUSA Program located a copy of Mr. O'Reilly's Appointment Affidavit. Apparently, Mr. O'Reilly was appointed by the U.S. Attorney for NDOK for a limited purpose not to exceed January 5, 2016."

See Doc. 605, pg. 9, ¶ 46 and Exhibit 28, pg. 4 of 5 and ¶ 14.

25. On March 8, 2015, Appellant made a FOIA request to DOJ/FOIA seeking:

"information and any documentation pertaining to or showing the author-ization and/or appointment of Charles A. O'Reilly to represent the United States of America pursuant to 28 U.S.C. §§ 515, 543 and 28 CFR §§ 0.5(a), 0.5(b), 0.13(a), 0.13(b), 0.70(a) and 0.70(b)...between December 1, 2008 through January 1, 2015...for the Northern District of Oklahoma..."

See Doc. 604, pg. 9, ¶ 57; Doc. 605, pg. 6, ¶ 29 and Exhibit 19, pg. 1 of 1

26. Appellant received no response from DOJ/FOIA and the time period to do so

has long expired. Doc. 604, pg. 9, ¶ 58; Doc. 605, pg. 6, ¶ 30

27. On January 2, 2015, as resent on March 25, 2015, Appellant made a FOIA

request to Carmen M. Banerjee, Division Counsel for FOIA and PA Matters, P.O.

Box 227, Ben Franklin Station, Washington D.C. 20044, per OIP's decision on

September 29, 2014, Doc. 605, Exhibit 17, pg. 1 of 2,  seeking the same records

Appellant requested of DOJ/FOIA on March 8, 2015 above.  See Doc. 605, pg. 9,

¶ 59; Doc 605, pg. 6, ¶ 31 and Exhibit 20, pg. 1,2, and 3 of 3.

28. On July 21, 2015, Tax Division Counsel for FOIA and PA Matters assigned

"FOIA/TAX # 10875 to Appellant's FOIA request on O'Reilly's appointments under

13

28 U.S.C. §§ 515 and 543, or under 28 CFR § 0.13(a), between 2008 and 2015, and as of July 21, 2015 could only locate  2 documents Tax Division decided was responsive to Appellant's requests.  Doc. 604, pg. 9, ¶ 60; Doc. 605, pg. 7, ¶ 33 and Exhibit 21.

29.  The 2 pages are a November 16, 1992 oath Affidavit signed by O'Reilly to the Office of the United States as "Law Clerk," and a Notification of Personnel Action dated May 2, 1993 showing O'Reilly was an "EXC Appt" and with the Title of Trial Atty (TAX). See Doc. 605, Exhibit 21, pgs. 3 of 4 and 4 of 4

30.  On March 25, 2015, Appellant requested from Tax Division Counsel, Ms. Banerjee, seeking:

> "information and any documentation pertaining to or showing the authorization and/or appointment of John A. Marrella...between January 1, 2008 through January 1, 2013..in...the Title of 'Deputy Assistant Attorney General."

See Doc. 604, pg. 9, ¶ 61; Doc. 605, pg. 7, ¶ 34 and Exhibit 22, pgs. 1,2, and 3 of 3.

31.  On July 17, 2015, Tax Division Counsel for FOIA and PA Matters assigned "FOIA/TAX # 10871 to Appellant's FOIA request on Marrella's appointment as a Deputy Assistant Attorney General, and as of July 17, 2015;

> "could locate no responsive records."

See Doc. 604, pg. 9, ¶ 62; Doc. 605, pg. 7, ¶ 35 and Exhibit 5, pg. 1 of 2

32.  On March 8, 2015, Appellant made a FOIA request to DOJ/FOIA seeking the same information Appellant sought naming Marrella from the Tax Division in Appellant's March 25, 2015 FOIA request listed above in ¶ 30. See Doc. 604, pg. 10, ¶ 63; Doc. 605, pg. 7, ¶ 36 and Exhibit 23, pg. 1 of 1.

33.  Appellant received no response from DOJ/FOIA and the time period to do so has long expired.  Doc. 604, pg. 10, ¶ 68; Doc. 605, pg. 7, ¶ 37.

    (c)  The Facts Relevant to Kenneth P. Snoke's Frauds upon the Court.

1.  The Grand Jury Indictment is signed by Snoke as an Assistant United States

Attorney for the Northern District of Oklahoma.  See Doc. 2, pg. 14

2.   From March 10, 2009 through June 8, 2010, Snoke presented himself as
an Officer of the United States under Article II, § 2, Cl.2 and 28 U.S.C. §
542(a) for the Northern District of Oklahoma. See Doc. 373 and 374 where Snoke
was allowed to withdraw; compare with Docs. 2, pg. 14, 104, 138, 292

3.   On June 28, 2009, and until January 27, 2010, Snoke presented himself as
an Assistant United States Attorney to Woodward.  See Doc. 94, 104, 138, and
292, pg. 1 (n.1).

4.   On January 27, 2010, Snoke presented himself as an Assistant United
States Attorney to Woodward where Woodward declared he was appointed on January
21, 2010 as the Northern District of Oklahoma's United States Attorney under
28 U.S.C. § 546(a) and (c)(2). See Doc. 292, pg. 1 and note 1.

5.   As of May 24, 2010, when Judge Eagan appointed Woodward under 28 U.S.C.
§ 546(d), Snoke presented himself as an Assistant United States Attorney to
Woodward. See Doc. 366

     (i) Facts obtained through Freedom of Information Act

6.   On December 31, 2014, Appellant made a FOIA request to Williams' agency
seeking:

> "information and any documentation pertaining to or showing the authoriz-
> ation and/or appointment of Kenneth P. Snoke to represent the United States
> of America pursuant to 28 U.S.C. §§ 542, 543, and 547(1)...between January
> 1, 2008 through January 1, 2011....in...Title of 'Assistant United States
> Attorney' for the Northern District of Oklahoma..."

See Doc. 604, pg. 10, ¶ 65; Doc. 605, pg. 7-8, ¶ 38 and Exhibit 24, pg. 1 of 1

7.   On July 23, 2015, in FOIA No. 2015-01085, EOUSA replied to Appellant's
December 31, 2014 FOIA to Williams agency finding:

> "Please note.  There were no records located for Kenneth Snoke because
> they are either no longer employees or were never employed by EOUSA."

See Doc. 604, pg. 8, ¶ 66; Doc. 605, pg. 8, ¶ 39 and Exhibit 2, pg. 1 of 5

8.   EOUSA, on behalf of Williams, stated they had searched all the records

of the "various United States Attorneys" and that:

"All of the records you seek are being made available to you."

Id.

9.  The July 29, 2015 letter from EOUSA, Doc. 605, Exhibit 3, supplementing

EOUSA's July 23, 2015 initial reply, did not involve Snoke.

10.  On March 8, 2015, Appellant made a FOIA request to DOJ/FOIA seeking the

same information Appellant sought naming Snoke from Williams' agency in App-

llant's December 31, 2014 FOIA request listed above in ¶ 6.  See Doc. 604, pg.

10, ¶ 67; Doc. 605, pg. 8, ¶ 40 and Exhibit 25, pg. 1 of 1.

11.  Appellant received no response from DOJ/FOIA and the time period to

do so has long expired.  Doc. 604, pg. 10, ¶ 68; Doc. 605, pg. 8, ¶ 41.

    (d)  The Facts Relevant to Jeffrey A. Gallant's Frauds upon the Court

1.  Gallant entered his appearance in this case on September 9, 2010.  Doc.

421.

2.  Gallant presented himself as an Assistant United States Attorney under 28

U.S.C. § 542(a) and as an Officer of the United States. Id.

3.  Gallant has remained presenting himself as an Officer of the United States

and Assistant United States Attorney properly appointed pursuant to § 542(a)

throughout the time after his entry.

    (i)  Facts obtained through Freedom of Information Act

4.  On January 2, 2015, Appellant made a FOIA request to Williams' agency

seeking:

    "information and any documentation pertaining to or showing the authoriz-
    ation and/or appointment of Jeffrey A. Gallant to represent the United
    States of America pursuant to 28 U.S.C. §§ 542, 543 and 547(1)...between
    January 1, 2010 and January 1, 2015...in...Title of 'Assistant United
    States Attorney' for the Northern District of Oklahoma..."

See Doc. 604, pg. 10-11, ¶ 69; Doc. 605, pg. 8, ¶ 42 and Exhibit 26.

5.  On July 23, 2015, in FOIA No. 2015-01085, EOUSA replied to Appellant's

January 2, 2015 FOIA to Williams' agency listed in paragraph 4 above, located

only one oath Gallant signed on November 17, 2006 identifying a Date of

Appointment of November 12, 2006. See Doc. 604, pg. 11, ¶ 70-71; Doc. 605,

pgs. 2,8, ¶¶ 4, 43 and Exhibit 2, pgs. 1 of 5 and 3 of 5.

6.   The July 23, 2015 reply states in relevant part:

> "To provide you with the greatest degree of access authorized by the
> Freedom of Information Act and Privacy Act, we have considered your
> request in light of the provisions of both statutes.  ALL THE RECORDS YOU
> SEEK ARE BEING MADE AVAILABLE TO YOU. We have processed your request under
> the Freedom of Information Act and are making all records required to be
> released, or considered appropriate for release as a matter of discretion,
> available to you.  THIS IS A FULL RELEASE OF 2 PAGES."

Doc. 605, pg. 4 and Exhibit 2, pg. 1 of 5.

7.   The July 29, 2015 letter from EOUSA, Doc. 605, Exhibit 3, supplementing

EOUSA's July 23, 2015 initial reply, did not involve Gallant.

8.   On July 30, 2015, Ms. Richardson declared in Springer v. United States

Attorney, et al., 15-CV-142, that she is the person assigned to Appellant's

January 2, 2015 FOIA request naming Gallant and seeking Gallant's appointments

to Office under 28 U.S.C. § 542, and that she received Appellant's January 2,

2015 FOIA request on January 9, 2015.  See Doc. 605, pg. 9, and Exhibit 28, pg.

2 of 5.

9.   Ms. Richardson's declaration identified Gallant and referred the Court

to an "accurate statement of the FOIA request content." Id.

10.  Ms. Richardson also declares that she searched "eOPF," "DOJ's MIcrosoft

Outlook Office, Global Address Book, Gloval Address Listings (GAL), and after

that thorough search she could only locate the November 17, 2006 oath of

Gallant.  Doc. 605, pg. 9 and Exhibit 28, pg. 3 of 5, ¶¶ 10-12

11.  Ms. Richardson declared that she  searched the offices of 94 United States

Attorneys and that of EOUSA and her search was "reasonably calculated to uncover

ALL RECORDS RESPONSIVE TO [Appellant's] requests." Doc. 605, pg. 9 and Exhibit

28, pg. 4 of 5, ¶¶ 16,17

12. Ms. Richardson also declared:

> "I am not aware of any other locations within EOUSA where any other records that might be responsive to plaintiff's requests are likely to be located."

Id. at ¶ 18

13. And finally, Ms. Richardson declared:

> "I am not aware of any other method or means by which a further search could be conducted that would likely uncover additional responsive records."

Doc. 605, pg. 9 and Exhibit 28, pgs. 4 of 5 and 5 of 5.

14. On March 8, 2015, Appellant made a FOIA request to DOJ/FOIA seeking the same information Appellant sought naming Gallant from Williams' agency in Appellant's January 2, 2015 FOIA request listed above in ¶ 4. See Doc. 604, pg. 11, ¶ 72; Doc. 605, pg. 8, ¶ 44 and Exhibit 26, pg. 1 of 1

15. Appellant received no response from DOJ/FOIA and the time period to do so has long expired. Doc. 604, pg. 11, ¶ 73; Doc. 605, pg. 9, ¶ 45.

    (e)  The District Court has made Three Statements in Three Orders

1. On January 28, 2010, the District Court entered an order ruling on Appellant's Post Trial Motion regarding Woodward's authority to be Acting United States Attorney without citing any statutory authority to be so. Doc. 293, pg. 12-13,

2. On February 22, 2010, the District Court, accepting under the presumption theory, that Woodward, Snoke, and O'Reilly, had the authority to represent the the United States of America in this case and to prosecute the same under 28 U.S.C. § 547(1). Doc. 312, pg. 2-3

3. On March 4, 2014, the District Court procedurally barred "challenges to the authority or jurisdiction of the United States Attorney, or any assistant (or any Acting or Special Assistant) United States Attorney involved in the prosecution including Mr. Springer's argument that without a properly appointed United States Attorney, there can be no properly appointed assistants." Doc. 537, pg. 7

(f)  The District Court's Order dated October 20, 2015.

1.   The District Court's Order being appealed is dated September 20, 2015.
Doc. 606, pg. 1.

**3.  Statement of the Issues.**

Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and as inferred upon
Mr. O'Meilia, each relied upon the presumption the Courts accord Officers of
the United States, and as Officers of the Court, that what they said about
their purported authority and office of the United States was in fact true.
However, each of them named knew that Snoke, O'Reilly, Woodward, and Gallant,
held no appointments, as Officers of the United States, pursuant to Federal
Law of Congress and Article II, § 2, Cl.2.  Each of them knew why was because
President Obama chose not to appoint a United States Attorney and Mr. Holder
did not make appointments under 28 U.S.C. §§ 542, 543, and 546, in order to
force Oklahoma's two Republican Senators to relent on an appointment under §
541(a).

Appellant unearthed the fraud upon the Court over a period of time due to
Snoke, O'Reilly, Woodward, Gallant, and Mr. Williams efforts to prevent any
discovery on the actual appointments, at various times, applicable to (1)
Snoke, pursuant to 28 U.S.C. § 542(a); (2) O'Reilly, pursuant to 28 U.S.C. §§
515 and 543(a), and 28 CFR § 0.13(a); (3) Woodward, pursuant to 28 U.S.C. §§
542(a), 5 U.S.C. § 3345(a)(1), and 28 U.S.C. § 546(a) and (c)(2); and (4)
Gallant, pursuant to 28 U.S.C. § 542(a).

Appellant utilized the Freedom of Information Act ("FOIA") and obtained
the clear and convincing evidence that shows neither Snoke, O'Reilly, Woodward,
or Gallant, held the appointments required by Federal Law and Article II, § 2,
Cl. 2 that they declared they held.

Appellant timely filed a Motion to Enjoin Enforcement of the April 28,

19

2010 Judgment (Doc. 337) based uopn Several Frauds upon the Court, Doc. 604, and supported that Motion with a Declaration signed by Appellant and attaching 28 Exhibits mostly obtained from Mr. Williams' agency or the Department of Justice and Mr. Holder.

The records show and rebut the presumption of regularity the Court accords government lawyers revealing a massive fraudulent scheme upon the Court involv- Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia. These law- yers utilized the presumption of regularity to commit at least 13 frauds upon the Court that are each not in dispute. The only question for the Court to decide is whether, when all the lawyers purporting to represent the authority of the United States lacked the authority to do so, and disguised their stand- ing clothed in the presumption of regularity, does the District Court lose, or did it ever have, Article III, § 2 Judicial Jurisdiction and Power to decide the merits of the case brought against Appellant[?]. Appellant argues that without the fraud upon the Court, disguised behind the presumption of regularity, the lawyers purporting to represent the authority of the United States had no such authority and lacked standing under Article III, § 2, or their standing was mooted upon the resignation of Mr. O'Meilia.

The undisputed evidence clearly and convincingly shows Snoke and O'Reilly, who signed the indictment unsupervised, lacked Article III standing, or that standing becamse moot upon O'Meilia's resignation. The District Court, and on appeal to this Court, had no live case or controversy and if not for the frauds upon the Court the only function for the Courts was to dismiss the case.

Without requiring any response or evidence from Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, or Mr. O'Meilia, the District Court denied the Motion finding the argument frivolous. Doc. 606.

20

The District Court disregarded the undisputed Frauds upon the Court and simply concluded that "[O]ver the years, Mr. Springer has made similar arguments challenging the authority of prosecutors...all of which have been rejected.  Further discussion of these frivolous arguments is not necessary."

   a.   First Issue:

   Is the argument that various frauds upon the Court that involve the Courts Article III, § 2 judicial power and authority, without which the District Court's Article III, § 2 judicial power and authority either never existed as a live case or controversy, or had become mooted after the case began, and where the lawyers representing the United States of America lacked standing or authority to do so, a frivolous argument?

      Argument  and  Authority:

   The facts are not in dispute.  The indictment is signed by Snoke, as an Assistant United States Attorney, pursuant to 28 U.S.C. § 542(a), to which Snoke had received no appointment by Attorney General Eric H. Holder, Jr. ("Mr. Holder") as of or after March 10, 2009. Doc. 604, pg. 24

   The indicment is also signed by O'Reilly as a Special Assistant United States Attorney, pursuant to 28 U.S.C. §§ 515(a) and 543(a), to which O'Reilly had never received an appointment by Marrella, on December 23, 2008 pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), nor had O'Reilly received any 28 U.S.C. § 543(a) appointment on January 5, 2009 by anyone, or extended in January, 2010, January, 2011, January, 2012, or December 19, 2012. Id. pg.18-22

   Marrella was not a Deputy Assistant Attorney  General, as O'Reilly, Gallant, and Williams, argued hiding behind the presumption the Court afforded them, but rather, Marrella is reported as an Assistant United States Attorney in New Haven Connecticut. See U.S. v. James, 268 Fed. Appx. 124(2nd Cir. 2008)

   Since O'Reilly, Gallant, and Mr. Williams, stated Marrella was the Deputy Assistant Attorney General, "Tax Division," See Doc. 605, Exhibit 16, pg. 7 of 12, Appellant made a FOIA request to Tax Division's Counsel on FOIA matters who replied she "could locate no responsive records" showing Marrella was ever

21

appointed as a "Deputy Assistant Attorney General" during the time period of December, 2008, or at any other time. Doc. 605, pg. 7 and Exhibit 5, pg. 1 of 2.

Ms. Richardson declared under the penalty of perjury that she searched all the records of 94 United States Attorney Offices, and the records of EOUSA, and for the better part of two years could locate no records showing O'Reilly was ever appointed as a Special Assistant United States Attorney and even concluding he was no longer employed as of June 4, 2014. Doc. 605, Exhibit 16, pg. 5 of 12. See Ms. Richardson's Declaration at Doc. 605, Exhibit 28, pg. 4 of 5. However, O'Reilly continued to sign documents filed in this case.

Ms. Richardson was unable to locate, with the assistance of staff in Williams' office, any letters appointing O'Reilly, or purporting to appoint O'Reilly, to the office of Special Assistant United States Attorney, between January, 2009 through January, 2013 as O'Reilly, Gallant, and Williams had declared to the Court. See Doc. 605, Exhibit 16, pg. 7 of 12; and Exhibit 28, pg. 4, ¶ 14. The only record with O'Reilly's name on it is an oath he may have signed on January 5, 2009, which indicates a "Date Appointed" of January 5, 2009. See Doc. 605, Exhibit 3, pg. 2

Neither EOUSA, Williams' agency, or anyone else, could locate any January 5, 2009 appointment record naming O'Reilly to the Office of Special Assistant United States Attorney. Doc. 605, Exhibit 2, pg. 1 of 5 and Exhibit 28, pg. 4 of 5

In the Frauds upon the Court involving Woodward, neither EOUSA, Williams' agency, or anyone else, could locate any appointment for Woodward under 28 U.S.C. § 542(a), nor any date such an appointment was even thought to have been made. In order to qualify as Mr. O'Meilia's "First Assistant" under 5 U.S.C. § 3345(a)(1), Woodward would first need an appointment by the Attorney General under § 542(a). No record exists showing Woodward was ever O'Meilia's "First

22

Assistant" prior to June 28, 2009. Woodward was not authorized to be "Acting United States Attorney" under § 3345(a)(1) as of June 28, 2009. Furthermore, Woodward did not receive an appointment by the Attorney General on January 21, 2010, as Woodward, Snoke, and O'Reilly declared on January 27, 2010. See Doc. 292, pg. 1 (n.1). Without a § 546(a) appointment from the Attorney General expiring, the district court never acquired authority of Congress under § 546(d) to make the order of appointment Judge Eagan made on May 24, 2010. See Doc. 605, Exhibit 4, pg. 1 of 1.

Lastly, Gallant had no appointment by the Attorney General, pursuant to 28 U.S.C. § 542(a), as of September 9, 2010, when he entered his appearance in this case. The only record EOUSA and Williams' agency could located is an oath affidavit signed on November 17, 2006 identifying an appointment date of November 12, 2006. Obviously, even if a previous appointment existed, and it did not, when Mr. Holder became Attorney General, the law is clear, Gallant would need an appointment from him personally.

> (i) Appellant's argument that the Court's Article III, § 2 Judicial Power either never existed, or had ceased upon Mr. O'Meilia's resignation, where neither Snoke, O'Reilly, or Woodward, were authorized to represent the United States of America, and where Snoke, O'Reilly, and Woodward's lack of Article III standing had been disguised through several Frauds upon the Court, is not a Frivolous Argument as the District Court decided.
>
> > (A) Persons representing the authority of the United States in an Article III Court, including a criminal case, must be holding an Article II, § 2, Cl. 2 appointment, established by law of Congress, as an Officer of the United States, in order to establish standing to prosecute any Citizen in the name and benefit of the United States.

No facts are in dispute and that 13 Frauds upon the Court were committed by Woodward, Snoke, O'Reilly, Gallant, and Williams, as inferred upon O'Meilia.

To begin, "the United States is entirely a creature of the Constitution. Its powers and authorities have no other source." U.S. v Verdugo-Urguidez, 494 U.S. 259, 270(1990) Statutes, when in a criminal context, are to be strictly

23

construed.  U.S. v. Moore, 423 U.S. 122, 145(1975).  A prosecutor's discretion is "subject to constitutional constraints." U.S. v. Batchelder, 442 U.S. 114, 125(1979); U.S. v. Armstrong, 517 U.S. 456, 464(1996).  Article III safeguards a defendant against oppressive governmental practices.  United States v. Quarles, 350 U.S. 11, 16(1955).

All federal courts are courts of limited jurisdiction and power. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 128 L.Ed. 2d 391(1994).  These Courts "possess only the power authorized by Constitution and statutes." Id. citing Willy v. Coastal Corp., 503 U.S. 131, 136-37, 117 L.Ed 2d 280, 112 S. Ct 1076(1972).  This limited power "is not to be expanded by judicial decree." Kokkonen, 511 U.S. at 377, citing American Fire & Casualty Co. v. Finn, 341 U.S. 6, 18, 95 L.Ed 702, 71 S.Ct. 534(1951)

The burden of proving a criminal case is brought within the federal court's limited Article III power is on the party asserting the case is properly before the federal court.  McNutt v. General Motors Acceptance, 298 U.S. 178, 182-83, 80 L.Ed 1135, 56 S.Ct. 780(1936).

The Court is not to "presume the truthfulness of factual allegations in the complaint" when the dispute involves "jurisdictional facts." Radel v. Sanborn W. Corps. Inc, 384 F.3d 1220, 1224(10th Cir. 2004).

Article III standing is essential and unchanging part of the case or controversy requirements of Article III Judicial Power.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed 2d 351(1992); See also Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1153(10th Cir. 2013).

"One who seeks to initiate or continue proceedings in federal court must demonstrate, among other requirements, both standing to obtain relief requested ...and, in addition, 'an ongoing interest in the dispute on the part of the opposing party that is sufficient to establish  concrete adversness." Bond v. U.S., 131 S.Ct. 2355, 2361 (2011)

24

A controversy "must exist during all stages of appellate review," and if the controversy ceases to exist, "the action is moot and this Court lacks jurisdiction to adjudicate the matter." U.S. v. Seminole Nation, 321 F.3d 939, 943(10th Cir. 2002). The "parties must continue to have a 'personal stake in the outcome' of the lawsuit..." Lewis v. Continental Bank, 494 U.S. 427, 477-78(1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial, and appellate." Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed 2d 43(1998).

"[i]f during the pendency of the case circumstances change such that [a party's] legally cognizable interest in a case is extinguished, the case is moot..." Kansas Judicial Review v. Stout, 562 F.3d 1240, 1245(10th Cir. 2009) "There is no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Chafin v. Chafin, 182 L.Ed 2d 1, 10(2013).

"[I]t is not enough," the Supreme Court held, that a dispute was very much alive when suit was filed, and that the parties must "continue to have a personal stake" in the ultimate disposition of the lawsuit. Lewis, 494 U.S. at 477-78. "Mootness, like standing, is a jurisdictional doctrine originating in Article III's 'case' or 'controversy' language." Wild Warth Guardians v. Pub. Serv. Co., 690 F. 3d 1174, 1182(10th Cir. 2012) "Mootness usually results when a Plaintiff has standing at the beginning of a case, but due to intervening events, loses one of the elements of standing during litigation; thus, Courts have sometimes described mootness as 'the doctrine of standing set in a time frame.'" Wildearth, 690 F.3d at 1183; quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 68(n.22)(1997)

Courts are not licensed under mootness "to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest..." Friends of Earth v. Laidlaw Env., 528 U.S. 167, 192(2000). "Federal Courts are

25

without power to decide questions that cannot affect the rights of the litig-
ants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 30 L.
Ed 2d 413, 92 S.Ct. 402(1971). "[t]he inability of the federal judiciary 'to
review moot cases derives from the requirement of Art. III of the Constitution
under which the exercise of judicial power depends upon the existence of a case
or controversy.'" Defunis  v. Odegaard, 416 U.S. 312, 316, 40 L.Ed 2d 164, 94
S.Ct. 1704(1974).

    "Standing to maintain the suit, and hence, this Courts jurisdiction to
entertain it...would normally be considered a threshold question that must be
resolved...before proceeding to the merits."  Steel Co. v. Citizens for Better
Env., 523 U.S. 83, 88-89(1998).  When jurisdiction under Article III ceases,
the only remaining function of the Court is announcing the fact and dismissing
the case. Id. at 84

    The "Plaintiff bears the burden of demonstrating standing [and] the def-
endant bears the burden of proving mootness." Wildearth Guardians, 690 F.3d
at 1183  In McNutt, 298 U.S. at 189, the Supreme Court said:

> "In the nature of things, the authorized inquiry is primarily directed to
> the one who claims the power of the Court should be exerted in his behalf.
> As he is seeking relief subject to this supervision, it follows that he must
> carry    throughout the litigation the burden of showing that he is prop-
> erly in Court...If this allegation of jurisdictional facts are challenged
> by his adversary in any appropriate manner, he must support them by comp-
> etent proof."

    "[t]hose who involve the power of a federal court" must "demonstrate stan-
ding..." Already, LLC, v. Nike, 133 S.Ct. 721, 726(2012).  Article III stand-
ing cannot be assumed.  U.S. v. Pickard, 676 F.3d 1214, 1218 (n.2)(10th Cir.
2012) citing Steel Co. 523 U.S. at 103-04  The party invoking a federal court's
Article III Judicial Power "must produce evidence on each element of standing."
Northern Laramie Range Alliance v. FERC, 733 F.3d 1030, 1034(10th Cir. 2013)
"Standing is the threshold question in every case..." Opala v. Watt, 454 F.3d

1154, 1157(10th Cir. 2006).

Woodward, Snoke, O'Reilly, Gallant, Mr. Williams, and Mr. O'Meilia, were each at all times aware of the above authorities and the continuing duty of maintaining standing and utilized the presumption that what they said was true to advance and continue in the Frauds upon the Court they intended to deceive the Court in to an exercise of Article III, § 2 Judicial Power that either never existed, or ceased to exist upon Mr. O'Meilia's resignation.

> (1)  Even though the cases establish there is no presumption in favor
>      of assuming a party has standing to bring a case or controversy,
>      or maintain one that has become moot, and that the question of
>      standing and mootness are subject to examination at any stage,
>      there is also a rebuttable presumption of regularity supporting
>      the official acts of persons claiming to be Officers of the United
>      States.

At the heart of each of the Several Frauds upon the Court intentionally committed by Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and inferred upon Mr. O'Meilia's inactions, each lawyer named above utilized and relied upon the "presumption of regularity [that] supports the official acts of public officers and, in the absence of clear evidence to the contrary, Courts presume they have properly discharged their official duties." U.S. v. Chemical Foundation, 272 U.S. 1, 14-15(1926). See also U.S. Postal Services v. Gregory, 534 U.S. 1, 10(2001). In fact, that is exaclty the legal argument this Court used in its decision in U.S. v. Springer, 580 Fed. Appx. 655, 657(10th Cir. 2014).

"To reject the AUSA's representations is not only to ignore 'the presumption of regularity recognized in Armstrong, 517 U.S. at 464, but to disregard the AUSA's duty as an attorney." U.S. v. Deberry, 430 F.3d 1294, 1300(10th Cir. 2005). "Attorneys are officers of the Court and when they address the Judge solemnly upon a matter before the Court, their declarations are virtually made under oath." Id. citing Holloway v. Arkansas, 435 U.S. 475, 486(1978)

The question then is whether Appellant has rebutted with clear evidence the presumption given to Snoke, O'Reilly, Woodward, and Gallant, in regard

27

to  whether they each were appointed as officers of the United States that they

purported in the District Court to be and this Court.

> (2)  The required appointments and offices that Congress established
> by law that Snoke, O'Reilly, Woodward, Gallant, Mr. Williams,
> and as inferred upon Mr. O'Meilia, said they were duly appointed
> to hold but which the evidence clearly shows otherwise.

In Marbury v. Madison, 1 Cranch, 137, 2 L.ed 60(1803), the Supreme Court

held that whether a person was appointed as an officer of the United States

required an Act of Appointment under Article II, § 2, Cl. 2, which reads:

> "He [the President] shall nominate, and by and with the Advice and consent
> of the Senate, shall...appoint...all other officers of the United States,
> whose Appointments are not herein otherwise provided for, and which shall
> be established by Law; but the Congress may by Law vest the Appointment of
> such inferior officers, as they think proper, in the President alone, in
> the Courts of Law, or in the Heads of Departments."

If the officer was removable by the Attorney General, or an officer of

the United States below the President, such as Assistant United States Attorneys

and Special Assistants, then the Officer subject to removal is an "inferior off-

icer." Morrison v. Olson, 487 U.S. 654, 671–72(1988).  "Generally speaking, the

term 'inferior officer' connotes a relationship with some higher ranking officer

or officers below the president." Edmonds v. U.S., 520 U.S. 651, 662, 137 L.Ed

2d 917, 117 S.Ct. 1573(1997).

The statutes involved in the several frauds upon the Court involving Snoke

includes § 542(a).  The statutes involved in the numerous frauds upon the Court

by O'Reilly include §§ 515(a) and 543(a).  The statutes involved in the numer-

ous frauds upon the Court by Woodward include §§ 542(a), 546(a), 546(d), and 5

U.S.C. § 3345(a)(1).  The states involved in Gallant's frauds upon the Court

includes § 542(a).

28 U.S.C. § 542(a) reads:

> "The Attorney General may appoint one or more assistant United States att-
> orneys in any district where the public interest so requires."

Assistant United States Attorneys are removable only by the specific Attorney General who appointed him or her. See 28 U.S.C. § 542(b).

28 U.S.C. § 515(a) reads in relevant part:

"The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceedings, civil or criminal, including grand jury proceedings ...which United States attorneys are authorized by law to conduct..."

Section 515((b) requires special attorneys to take the oath required by law.

28 U.S.C. § 543(a) entitled "Special Assistant United States Attorneys" reads:

"The Attorney General may appoint attorneys to assist United States attorneys where the public interest so requires."

Section 543(b) provides that Special Assistant United States Attorneys are removable by the Attorney General who appointed him or her.

28 U.S.C. § 546(a) is entitled "Vacancies" and reads:

"...the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant...(c)... [who] may serve until the expiration of 120 days after appointment by the Attorney General under this section."

Once the Attorney General personally appoints under § 546(a), the person is subject to removal by the President alone under 28 U.S.C. § 541(c).

28 U.S.C. § 546(d) reads in relevant part:

"If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the Court shall be filed with the Clerk of Court."

In order to understand the office established under 5 U.S.C. § 3345(a)(1), first requires an understanding of the office § 3345(a)(1) intends to fill in regard to United States attorneys under 28 U.S.C. § 541(a).

Section 541(a) reads:

"The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."

29

Section 541(c) provides all "United States Attorneys" are removable by the President only.

5 U.S.C. § 3345(a)(1) reads in relevant part:

"If an officer of an Executive agency...whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate,...resigns...(1) the <u>first assistant</u> to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346."

Section 3346 authorizes a "First Assistant" to serve in an acting capacity for 210 days.  See § 3346(a)(1).

Once an appointment is made to the offices established under 28 U.S.C. §§ 541, 542, 543, 546(a), 546(d), and 5 U.S.C. § 3345(a)(1), prior to taking the office, Congress requires such person to take an oath of office under 28 U.S.C. § 544.  Section 544 reads:

"Each United States attorney, assistant United States attorney, and attorney appointed under section 543 of this title, <u>before taking office</u>, shall take an oath to execute faithfully his duties."

(a)  Section 541

28 U.S.C. § 541 requires the United States Attorney be appointed by the President and confirmed by the Senate. U.S. v. Rose, 537 F. Supp. 2d 1172, 1176 (D.N.Mexico 2008).  The "power to remove a United States Attorney is vested exclusively in the President, who may exercise that power for any reason. 28 U.S.C. § 541(c)."  Id. at 1177 citing Parsons v. United States, 167 U.S. 324, 343, 17 S.Ct. 880, 42 L.Ed 185, 32 Ct. Cl. 626(1897)  The Office of United States Attorney is a high ranking office.  In Re: Nofziger, 925 F.2d 428, 437 (D.C. Cir. 1991).  The United States Attorney is a delegate of the President, not the Attorney General.  U.S. v. Cespedes, 151 F.3d 1329, 1332(11th Cir. 1998).

Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, were fully aware of what § 541 requires.

    (b)    Section 542

"Assistant United States Attorneys 'are appointed directly by the Attorney General'..." U.S. v. Braimah, 559 Fed. Appx. 698, 701(10th Cir. 2014) quoting U.S. v. Hilario, 218 F.3d 19, 22(1st Cir. 2000); see also U.S. v. Bridwell, 583 F.2d 1135, 1140(10th Cir. 1978)(assistant U.S. attorney to be appointed only by the Attorney General). Assistant United States Attorneys are appointed by the Attorney General personally and controlled and supervised by the United States Attorney. See Martinez v. Winner, 771 F.2d 424, 439(n.5)(10th Cir. 1985) "The prosecutor, functioning within the scope of his or her office...is...significant." U.S. v. Singleton, 165 F.3d 1297, 1299(10th Cir. 1999)(en banc)("a federal court cannot...assert jurisdiction over a criminal case unless it is filed and prosecuted by the United States Attorney or a properly appointed assistant.")Id. at 1300 citing U.S. v. Providence Journal Co., 485 U.S. 693, 699-708, 99 L.Ed 2d 785, 108 S.Ct. 1502(1988).

Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, were fully aware of what § 542 requires.

    (c)    Section 543

Section 543 requires Special Assistant United States Attorneys to be appointed by the Attorney General personally. Bridwell, 583 F.2d at 1140; U.S. v. Sigillito, 759 F.3d 913, 927(8th Cir. 2014). "[a]ttorneys specially appointed under such statute are required to take the oath prescribed for district attorneys and to evidence their authority in the district." U.S. v. 16,000 Acres of Land, 49 F. Supp. 645, 650(D.Kans. 1942) "If the United States appears in a cause only through a Special Assistant, who has no authority, then the United States as a party may not be properly in court." U.S. v. Denton, 307 F.2d 336, 338(6th Cir. 1962); see also Singleton, 165 F. 3d at 1300 citing to U.S. v. Durham, 941 F.2d 886, 992(9th Cir. 1991)(Whether Special Assistant United States

Attorney had been properly appointed when to jurisdiction of the district court)
The authority of "Special" Attorneys should be equal to that of Assistant United
States attorneys.  In Re Persico, 522 F.2d 41, 63(2nd Cir. 1975).

     (d)   Section 544

     For more than two hundred years each officer of the Executive Branch
has been bound by oath and affirmation to preserve, protect, and defend the
Constitution of the United States. See In Re Lindsey, 158 F.3d 1263, 1273(D.C.
Cir. 1998)(citing 28 U.S.C. § 544).

     (e)   Section 546

     Section 546(a) authorizes the Attorney General personally, as Head of the
Department of Justice and per Article II, § 2, Cl. 2, to appoint a United States
Attorney when a vacancy occurrs in a § 541(a) office for up to 120 days. See
also § 546(c)(2).  U.S. v. Baldwin, 541 F. Supp. 2d 1184, 1189(D.N. Mexico 2008)
"Congress has divided the responsibility for making such interim appointments
between the Attorney General and the district court." U.S. v. Young, 541 F.
Supp. 2d 1226, 1230(D.N. Mexico 2008)

     Section 546(d) authorizes a majority of district judges to issue an order
appointing a United States attorney when the Attorney General appointment under
§ 546(a) and (c)(2) expires.  Baldwin, 541 F. Supp. 2d at 1187.  "After [a §
546(a)] appointment expires, 'the district court for such district may appoint
a United States Attorney to serve until the vacancy is filled." U.S. v. Rose,
537 F. Supp. 2d 1172, 1176(D.N. Mexico 2008)  "Only when the executive branch
defaults [in making a § 541(a) appointment], then, does the district court have
the authority to appoint a prosecutor." Rose, 537 F. Supp. 2d at 1176; See
also Preserving United States Attorney Independence Act of 2007, P.L. 110-34, §
3, 121 Stat. 224.

     Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, were

fully aware of what §§ 543, 544, 546(a) and (c)(2), and § 546(d) requires.

(f)  Section 3345(a)(1)

The D.C. Circuit in S.W. Gen. v. NLRB, 796 F.3d 67, 69(D.C. Cir. 2015) recently vacated NLRB's order issued in that case where General Counsel did not qualify for authorization as "Acting" General Counsel under 5 U.S.C. § 3345(a)(1).  "Generally speaking, an acting officer can serve no longer than 210 days and cannot be the permanent nominee for the position." Id. at 69 "Actions taken by persons serving in violation of the [Federal Vacancies Reform Act of 1998][are] void ab initio." Id. citing 5 U.S.C. § 3348(d)(1) and (2).

Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, were fully aware of what §§ 3345(a)(1), 3346, and 3348(d)(1) and (2).

(g)  Tenure and Term of Office Holders under 28 U.S.C. §§ 541, 542, 543, 546(a) and (c)(2), 546(d), and 5 U.S.C. § 3345(a)(1) and 3346.

The term for a § 541 United States Attorney is 4 years.

The term for a § 546(a) United States Attorney is no more than 120 days.

The term for a § 546(d) United States Attorney is until a § 541 United States Attorney is appointed.

The term for a § 542 Assistant United States Attorney is the term of the Attorney General who appointed him or her.

The term for a § 543 Special Assistant United States Attorney is the term of the Attorney General who appointed him or her unless a shorter term is presecribed by the Attorney General.

The tenure of the judicial officers of the United States is provided for by the Constitution; but with that exception, no civil officer has every held office by a life tenure since the foundation of the government.  Shurtleff v. U.S., 189 U.S. 311, 316(1903).  Where an "Act is silent as to their terms of office, they can presumably be appointed for any term not exceeding that of

33

fully aware of what §§ 543, 544, 546(a) and (c)(2), and § 546(d) requires.

   (f) Section 3345(a)(1)

  The D.C. Circuit in S.W. Gen. v. NLRB, 796 F.3d 67, 69(D.C. Cir. 2015) recently vacated NLRB's order issued in that case where General Counsel did not qualify for authorization as "Acting" General Counsel under 5 U.S.C. § 3345(a)(1). "Generally speaking, an acting officer can serve no longer than 210 days and cannot be the permanent nominee for the position." Id. at 69 "Actions taken by persons serving in violation of the [Federal Vacancies Reform Act of 1998][are] void ab initio." Id. citing 5 U.S.C. § 3348(d)(1) and (2).

  Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, were fully aware of what §§ 3345(a)(1), 3346, and 3348(d)(1) and (2).

   (g) Tenure and Term of Office Holders under 28 U.S.C. §§ 541, 542, 543, 546(a) and (c)(2), 546(d), and 5 U.S.C. § 3345(a)(1) and 3346.

  The term for a § 541 United States Attorney is 4 years.

  The term for a § 546(a) United States Attorney is no more than 120 days.

  The term for a § 546(d) United States Attorney is until a § 541 United States Attorney is appointed.

  The term for a § 542 Assistant United States Attorney is the term of the Attorney General who appointed him or her.

  The term for a § 543 Special Assistant United States Attorney is the term of the Attorney General who appointed him or her unless a shorter term is presecribed by the Attorney General.

  The tenure of the judicial officers of the United States is provided for by the Constitution; but with that exception, no civil officer has every held office by a life tenure since the foundation of the government. Shurtleff v. U.S., 189 U.S. 311, 316(1903). Where an "Act is silent as to their terms of office, they can presumably be appointed for any term not exceeding that of

33

the officer appointing them." De Castro v. Board of Commissions, 322 U.S. 451, 462(1944). In the "absence of a Congressional statute to the contrary, inferior officers...serve...at the discretion of their appointing officers." Kalaris v. Donuvan, 679 F.2d 376, 397(D.C. Cir. 1982).

Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, were fully aware of what the terms and tenure is for officers appointed under §§ 541, 542, 543, 546, and § 3345(a)(1).

(h) Snoke held no appointment by Attorney General Eric H. Holder Jr.

Although an Assistant United States Attorney, without a United States Attorney to assist, has absolutley no independent authority to represent the United States of America under Article III, § 2 and 28 U.S.C. § 547(1), the Department of Justice has no records showing Snoke ever received an appointment from Mr. Holder under 28 U.S.C. § 542(a) after January 20, 2009. See Doc. 604, pg. 8, ¶ 66; Doc. 605, pg. 8, ¶ 39 and Exhibit 2, pg. 1 of 5. ("there were no records located") Important here to is that EOUSA was responding to Appellant's FOIA request to United States Attorney Williams. See Doc. 605, pg. 7-8, ¶ 38 and Exhibit 24, pg. 1 of 1. In addition, Appellant requested from the Attorney General personally any record of appointing Snoke, pursuant to 28 CFR § 16.3 and the Attorney General refused to respond. See Doc. 605, pg. 8, ¶ 41.

Snoke was not an Assistant United States Attorney pursuant to 28 U.S.C. § 542(a) and Article II, § 2, Cl. 2, as of or after January 20, 2009, and the evidence is clear and convincing so much that the facts are not in dispute.

(i) O'Reilly held none of the appointments he purported to hold.

O'Reilly was not appointed by a Deputy Assistant Attorney General on December 23, 2009, named Marrella, or anyone else, pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a). O'Reilly was not appointed by the Attorney General on

34

January 5, 2009, or extended on January 4, 2010, January 4, 2011, January 10, 2012, or on January 19, 2012, pursuant to 28 U.S.C. § 543(a). The facts show that while Williams' agency and the Department of Justice were contending O'Reilly was no longer employed, Doc. 605, pg. 5, ¶ 23 and Exhibit 15, pg. 1 of 1; Doc. 605, pg. 6, ¶ 27 and Exhibit 2, pg. 1 of 5, O'Reilly continued to file documents in this case on July 10, 2014 with Mr. Williams' printed name above his signature. See Doc. 605, pg. 5, ¶ 24 and Exhibit 16, pgs. 10, 11, and 12 of 12. Even if Ms. Richardson's discovery from some unknown file held secretly in Williams' agency produced the January 5, 2009 oath affidavit signed by O'Reilly, and there is absolutely no evidence that document is anything other than more evidence of another Fraud, that record posits that O'Reilly has an appointment date of January 5, 2009. Doc. 605, Exhibit 3, pg. 3 of 3.

President Obama took office on January 20, 2009 and Mr. Holder took office on or about January 23, 2009, which would mean any appointment by the previous Attorney General, as of January 5, 2009, would have expired upon Mr. Holder being sworn in. See De Castro v. Board of Commissions, 322 U.S. at 462; Kalaris, 679 F.2d at 397 Ms. Richardson also said she knew of no other place any instruments of appointment could be located. Doc. 605, Exhibit 28, pg. 4 of 5 ¶ 18.

O'Reilly was not appointed under 28 U.S.C. § 515(a) on December 23, 2008, and nor was he appointed under 28 U.S.C. § 543 on January 5, 2009 or at any time there after, and the evidence is clear and convincing so much that the facts are not in dispute.

    (j) Woodward held none of the appointments he purported to hold.

Woodward was not an Assistant United States Attorney pursuant to 28 U.S.C. § 542(a), as of or after January 23, 2009. Woodward was not Mr. O'Meilia's First Assistant under 5 U.S.C. § 3345(a)(1) as of June 28, 2009. Woodward

was not authorized to hold Acting United States Attorney Office as of June
28, 2009 through January 21, 2010.  Woodward did not receive an appointment
by Attorney General Eric H. Holder, Jr. on or about January 21, 2010, as the
Northern District of Oklahoma's United States Attorney pursuant to 28 U.S.C.
§ 546(a) and (c)(2).  Judge Eagan's May 24, 2010 appointment of Woodward under
28 U.S.C. § 546(d) was not authorized due to there having been no § 546(a)
appointment expiring.

The only evidence EOUSA could locate in its records, or that of Mr. Will-
iams' agency, was an oath affidavit Woodward signed on May 25, 2010 after he
fraudulently convinced Judge Eagan that he had a § 546(a) term that was expir-
ing.  That oath states the appointment date is May 25, 2010 when Judge Eagan's
order says the appointment was on May 24, 2010. See Doc. 605, pg. 4 and
Exhibit 2, pg. 4 of 5.

There is no oath affidavit naming Woodward as an "Assistant United States
Attorney" before or after January 20, 2009.  No record Woodward was Mr. O'Mei-
lia's First Assistant under § 3345(a)(1), and no record Mr. Holder appointed
Woodward on January 21, 2010.  After Mr. Williams was appointed in August, 2012,
there is no new appointment for Woodward under § 542(a) and no new oath yet
Woodward continues to purport holding such an appointment.  See Appendix 1.

Woodward was not an Assistant United States Attorney pursuant to 28 U.S.C.
§ 542(a) and Article II, § 2, Cl. 2, was not Mr. O'Meilia's First Assistant
under 5 U.S.C. § 3345(a)(1), was not authorized as Acting United States Attor-
ney under § 3345(a)(1), did not receive an appointment under 28 U.S.C. § 546(a)
and (c)(2) from Mr. Holder, which renders Judge Eagan's § 546(d) order of app-
ointment fraudulently obtained and unlawful, and after Mr. Williams was appoint-
ed under § 541, Woodward did not receive an appointment under § 542(a) from
Mr. Holder, or now, Ms. Loretta Lynch.

36

The evidence is clear and convincing, so much in fact, that the facts are not in dispute.

> (k)  Gallant held no appointment by Attorney General Eric H. Holder Jr.

Although Gallant did not join the case until September 9, 2010, his Frauds upon the Court are material.  The only record EOUSA and Williams' agency could find involving Gallant was a November 17, 2006 oath affidavit which suggests Gallant may have been appointed on November 12, 2006 as an Assistant United States Attorney. See Doc. 605, Exhibit 2, pg. 3 of 5.  Yet, no such appointment by any Attorney General could be located.  There would need be appointments both before and after January 23, 2009, when Mr. Holder was app-ointed.  There would also need be an appointment after April 27, 2015, when Ms. Lynch took her office.  Ms. Richardson said none could be located and there was no place else to look. Doc. 605, Exhibit 28, pg. 4 of 5.

Gallant was not an Assistant United States Attorney pursuant to 28 U.S.C. § 542(a) and Article II, § 2, Cl. 2, as of or after January 20, 2009, and the evidence is clear and convincing so much that  the facts are not in dispute.

> (3)  Snoke, O'Reilly, Woodward, and Gallant must be appointed according to Federal Law and the Constitution.

One key factor shared in common with Snoke, O'Reilly, Woodward, and Gallant, is that their various purported appointments were required by Federal Law and Article II, § 2, Cl.2, to come from the Attorney General personally.

Appointments have tenure, duration, and duties. U.S. v. Germaine, 99 U.S. 508, 511(1879)  The Constitution charges the President to enforce Federal Law. INS v. Leap, 510 U.S. 1301, 1304(1993)(citing Artilce II, § 3).

"[a]ny appointee exercising significant authority pursuant to the laws of the United States, is an officer of the United States, and must, therefore be appointed in the manner prescribed by § 2, Cl.2 of that Article [Article II]."

37

Buckley v. Valeo, 424 U.S. 1, 126, 132(1976)  "The constitution for purpose of appointment <u>very</u> <u>clearly</u> divides <u>all</u> of its officers into two classes." Id. at 125.    The primary class is a Principal Officer requiring nomination from the President and confirmation by the Senate. Id.  The inferior officers can be appointed by the President alone, Courts of Law, or vested in the head of a department. Id.  It is one office or the other.  This manner of appointment is a significant safeguard of the Constitutional scheme. Edmonds, 520 U.S. at 659.  This "structural safeguard" is intended to "curb Executive abuses of the appointment power" and "to promote a judicious choice of persons for filling the offices of the Union."  Id. at 659; S.W. Gen., 796 F.3d at 69

(4)  Without standing to represent the United States of America, and statutory authority to do so, the case must be dismissed.

"No man [or woman] in this Country is so high that he is above the law. No Officer of the law may set that law at defiance, with impunity.  All officers of the Government, from the highest to the lowest, are creatures of the law and are bound to obey it."  U.S. v. Lee, 106 U.S. 196, 220, 27 L.Ed 171, 182 (1882).  No principal is better settled than the maxim that he who comes into Court must have clean hands and keep them clean. Root Refining Co. v. Universal Oil Products Co., 169 F.2d 514, 534-35(3rd Cir. 1948)(remanded from S.Ct.)

Congress directs United States Attorneys represent the government in all cases filed within the district.  U.S. v. Bolden, 353 F.3d 870, 877(10th Cir. 2003).  "The government's sovereign authority to prosecute and conduct a prosecution is vested SOLELY in the United States Attorney and his or her <u>properly appointed assistants.</u>" Singleton, 165 F.3d at 1300. See also Moses v. Kennedy, 219 F. Supp. 762, 765(D.Colo. 1963); Kersha v. Colorado, 390 Fed. Appx. 777, 779(10th Cir. 2010)(unpublished)("authority...exclusively to United States attorney")

The settled rule is that all criminal cases brought in a district must be

represented by the United States Attorney or a designated assistant. Confiscation Cases, 7 Wall 454, 456(1869)

The law is well settled that a private citizen has no judicially cognizable interest in the criminal investigation or prosecution of another. Linda R.S. v. Richard D., 410 U.S. 614, 619, 135 L.Ed 2d 536, 93 S.Ct. 1146(1973); Doyle v. Oklahoma Bar Association, 998 F.2d 1559, 1566(10th Cir. 1993). In Providence Journal Co., 485 U.S. at 708, "the Supreme Court held that where an attorney purportedly represents the United States is without authority to do so, 'we must dismiss the heretofore granted writ of certiorari for want of jurisdiction.'" U.S. v. Navarro, 959 F. Supp. 1273, 1276(E.D.Cal. 1997)

Congress limits those who are authorized to appear on behalf of the United States. Id. at 1277. "Only officers of the Department of Justice or the United States Attorney can represent the United States in the prosecution of a criminal case." Singleton, 165 F. 3d at 1300. Only "United States Attorneys, whether personally or through his assistants, may appear in a criminal case" and a "criminal case prosecuted by an unauthorized attorney is non cognizable." Navarro, 959 F. Supp. at 1277.

"Of course, it cannot be otherwise because the government functions only through its officers and agents." Singleton, 165 F.3d at 1300. "Since a federal offense is defined as 'an offense against the United States,' see 18 U.S.C. § 2, and the United States is the named plaintiff in a criminal prosecution, it seems self-evident that only the United States has standing to pursue an affront to its criminal laws." U.S. v. Navarro, 972 F. Supp. 1296, 1305 (E.D. Cal. 1997)

"Indeed, a federal court cannot even assert jurisdiction over a criminal case unless it is filed by a United States Attorney or a properly appointed appointed assistant." Singleton, 165 F.3d at 1300. Where the person representing the United States is not authorized to do so "a jurisdictional defect is

39

tendered and the proceedings are a nullity." Navarro, 959 F. supp. at 1277.
Such an issue is jurisdictional and cannot be cured. Id.

Where the prosecutor isn ot authorized "the government has not appeared."
Navarro, 972 F. Supp. at 1305.  When "an unauthorized attorney purports to
represent the United States, the United States is not a party within the mean-
ing of Article III, and thus, once again, the Court is without jurisdiction."
Id.  See also U.S. v. Bennett, 464 Fed. Appx. 183, 185(4th Cir. 2012)(unpubl-
ished)(Court lacks jurisdiction where Government lacks authorized representat-
ive.   Where the United States appears through a "Special Assistant, who has
no authority, then the United States as a party may not be properly in Court."
U.S. v. Deaton, 307 F.2d 336, 338(6th Cir. 1962)

Where the "United States attorney's appointment is invalid, then her dele-
gation is similarily invalid."  U.S. v. Gantt, 194 F.3d 987, 998(9th Cir. 1999)
"since 'Judicial jurisdiction implies the power to hear and determine a cause
...' United States v. Grady, 89 U.S. 641, 647, 22 Wall 641, 22 L.Ed. 772(1875),
in the absence of jurisdiction a court may neither hear nor dispose of a case."
Navarro, 959 F. Supp. at 1277.

(5)  A Judgment procured by Fraud upon the Court, including that
Fraud that goes to the Jurisdiction of the Court, is never final

"One long recognized exception to the general rule of finality is where a
judgment was based on a claim that the party obtaining the judgment knew it to
be fraudulent."  Robinson v. Audi Akt., 56 F.3d 1259, 1265(10th Cir. 1995)  A
"'decision produced by Fraud [upon] the Court is not in essence a decision at
all and never becomes final.'" U.S. v. Williams, 790 F.3d 1059, 1071(10th Cir.
2015) quoting Kemmer v. CIR, 387 F.2d 689, 691(7th Cir. 1968)

In addition, a decision by a Court that lacked jurisdiction over the pro-
ceedings is a decision entered in the absence of jurisdiction and "is not a
decision at all and, therefore, never becomes final." Simmons v. CIR, 1999

40

U.S. App. Lexis, 15672(10th Cir. 1999) citing Billingsley v. CIR, 868 F.2d
1081, 1084-85(9th Cir. 1989)

"Federal Courts have long recognized fraud on the Court as an exception to
the doctrine of finality of judgment." United Business Communications Inc.,
v. Racal-Milgo, Inc. 591 F. Supp. 1172, 1183(D.Kans. 1984)

    (a)   Fraud Upon The Court

Fraud upon the Court "is a nebulous concept."  Wikin v. Sunbeem Corp., 466
F.2d 714, 717(10th Cir. 1972).  Such Fraud is a "condition that renders a jud-
gment unenforceable." United Student Aid Funds, Inc., v. Espinoza, 176 L.Ed 2d
158, 169(2010).  "Fraud vitiates the most solemn contracts, documents, and
even judgments." U.S. v. Throckmorton, 98 U.S. 61, 64(1878)  One such fraud
upon the Court is "where an attorney fraudulently or without authority assumes
to represent a party..." 98 U.S. at 65-66

In Throckmorton, the Court saw "nothing in the bill to indicate to the
Court that it ever received the sanction of the Attorney General, or was brought
by his direction. 98 U.S. at 70  "No fraud is more odious than an attempt to
subvert the administration of justice."  Hazel-Atlas Glass Co., v. Hartford Co.,
322 U.S. 238, 251, 88 L.Ed 1250, 64 S.Ct. 997(1944)(Roberts J. Dissenting).

In Hazel-Atlas the Court found a fraud upon the court that was "deliberat-
ely planned and carefully executed scheme to defraud...the Circuit Court of
Appeals." Id. at 245-46  "Fraud upon the Court should...embrace only that
specie of fraud which does, or attempts to, defile the Court itself, or is a
fraud perpetrated by officers of the Court so that the judicial machinery can-
not perform in the usual manner."  Alexander v. Robertson, 882 F.2d 421, 424(9th
Cir. 1989).

In the case against Appellant both defiling of the Court and a fraud per-
petrated by officers of the Court have been shown by clear and convincing evid-

41

ence.  "[e]xtrinsic fraud...that infects the actual judicial process, is grounds
to set aside a judgment procured by fraud."  Browning v. Navarro, 826 F.2d 335,
344(5th Cir. 1987)(citing Throckmorton.  Hazel-Atlas Glass expanded Throckmorton
to include intrinsic fraud,  Id. at 344, by officers of the Court.  Geo P. Rein-
tjes, Co. v. Riley Stoker Corp., 71 F.3d 44, 47-48(1st Cir. 1995).  This fraud
includes "misrepresentations directly affecting the judicial process." Plotner
v. A T & T Corp., 224 F.3d 1161, 1170(10th Cir. 2000)

"Fraud on the Court (other than fraud as to jurisdiction)....is...Fraud...
where...a member is corrupted..."  Bulloch v. U.S., 763 F.2d 1115, 1121(10th
Cir. 1985)(en banc).  And in this case, the fraud upon the Court goes to the
Court's jurisdiction, or lack thereof.

Since attorneys are officers of the Court, their conduct, if dishonest,
would consitute fraud upon the Court.  H.K. Porter Co. Inc., v. Goodyear Tire
& Rubber Co., 536 F.2d 1115, 1119(6th Cir. 1976)

Fraud upon the Court is conduct:

i) on the part of an officer of the Court;

ii) directed to the judicial machinery;

iii) that is intentionally false, or in reckless disregard for the truth;

iv) is a positive averment or concealment when the officer is under a
duty to disclose;

v) that deceives the Court.

See Workman v. Bell, 245 F.3d 849, 852(6th Cir. 2001)

The Tenth Circuit is one of the Circuits that requires intent to defraud.
"Intent to defraud [the Court] is an absolute prerequisite to a finding of
fraud [upon] the Court."  Weese v. Schukman, 98 F.3d 342, 353(10th Cir. 1996)
Such fraud may subvert the integrity of the Court itself, or is perpetrated by
officers of the Court.  Gleason v. Jandrucko, 860 F.2d 556, 560(2nd Cir. 1988)

There is no dispute the 13 Frauds upon the Court were intentional and

42

all five of the elements listed above have been shown by clear and convincing evidence rebutting, not only any presumption of regularity, but also rebutting any dispute whatsoever.

(6)  Jurisdiction of the Court to which the Fraud was schemed upon is the proper Court to address the Fraud.

There is no dispute that the Frauds upon the Court, which are not in dispute, found there way into the United States Court of Appeals for the Tenth Circuit.  The case should never been on appeal to the Tenth Circuit and the lawyers were fully aware that each of them, as officers of the Court, lied about their officer of the United States under Article II, § 2, Cl. 2 status.

Jurisdiction involving fraud upon the Court is of the Court where the Fraud was employed to obtain the Judgment.  See Cobell v. Norton, 226 F. Supp. 2d 1, 25(Dist. Columbia Dist. Ct., 2002) citing Hazel-Atlas Glass, 322 U.S. at 244; see also Andersen v. Roszowski, 681 F. Supp. 1284, 1291(N.D.Ill. 1988); Chi Title & Trust Co., v. Fox Theaters Corp., 182 F. Supp. 18, 38(D.C. N.Y. 1960).  "Equitable relief against fraudulent judgments is not a statutory creation.  It is a judicially devised rememdy fashioned to relieve hardships ....from...another Court made rule...that judgments should not be disturbed..." Hazel- Atlas Glass Co., 322 U.S. at 248.

The relief is properly entitled:

"MOTION TO ENJOIN ENFORCEMENT OF THE JUDGMENT"

Id. at 245

The inherent power to "investigate whether a judgment was obtained by fraud is beyond question."  Universal Oil Products Co. v. Root Ref. Co., 328 U.S. 575, 580(1946).  "There is no time limit for such proceedings, nor does the doctrine of laches apply."  U.S. v. Buck, 281 F.3d 1336, 1342(10th Cir. 2002) There are no formal requirements for asserting a claim of fraud upon the Court. Id.  "[w]here the occasion has demanded, where enforcement of the judgment is

43

'manifestly unconscionable,'" Pickford v. Talbott, 225 U.S. 651, 657(1912),

"the have wielded the power without hesitation." Hazel-Atlas Glass, 322 U.S.
at 244.

"[i]t is the power of the Court to correct the judgment gained through
the fraud which is determinative and not the nature of the proceedings in which
the fraud was committed." U.S. v. Bishop, 774 F.2d 771, 774(n.5)(7th Cir. 1985)

"It would defile the equitable foundations of the doctrine of res judicata
to suggest that a fraudulently obtained judgment must be entitled to preclusive
effect in the very court where the fraud was perpetrated, and thereby prevent
litigation on the fraud issue." United Business, 591 F. Supp. at 1183.

Again, there is no dispute that the Court was defrauded. The only issue
is whether the argument that what the fraud was intended to hide being that
neither Snoke, O'Reilly, Woodward, or for purpose of appeal, Gallant, were
authorized to represent the authority of the United States, i.e. lacked Article
III, § 2 standing to prosecute, or even present and sign the Grand Jury indict-
ment, and thus the Court was without Judicial jurisdiction to do anything but
dismiss the case.

> (7) 28 U.S.C. § 2255 motion procedure only applied to final judg-
> ments and the April 28, 2010 Judgment is not final due to the
> undisputed Frauds upon the Court to which it relies.

28 U.S.C. § 2255(f)(1) clearly states it applies 1-year from "the date on
which the judgment of conviction becomes final." "The plain language of §
2255 means what it says and says what it means." Prost v. Anderson, 636 F.3d
578, 583(10th Cir. 2011). See also Wall v. Kholi, 131 S.Ct. 1278, 1284(2010)
(§ 2255 words are to be given their common meaning).

A § 2255 motion is precluded "while review of the direct appeal is pend-
ing." U.S. v. Cook, 997 F.2d 1312, 1319(10th Cir. 1993). A Motion filed
under § 2255 "is not a habeas corpus proceeding." U.S. v. Hayman, 342 U.S.

44

205, 220(1952); See also Cook, 997 F.2d at 1316(n.8); U.S. v. Simmonds, 111 F.3d 737, 739(n.1)(10th Cir. 1997); U.S. v. Bergman, 746 F.3d 1128, 1130(10th Cir. 2014)(§ 2255 motions "remain part of the underlying criminal prosecution all the same"); Cook, 997 F.2d at 1319("the continuation of the same criminal matter")

Not a single word in § 2255 governs Fraud upon the Court Motions and a § 2255 Motion is not a habeas corpus petition.

(8)  The previously rejected arguments by the District Court.

The Frauds upon the Court by Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr. O'Meilia, have never been before the District Court until now. There is no dispute that all 13 Frauds upon the Court were both intended and accomplished.  The October 20, 2015 order being appealed states in relevant part:

> "Mr. Springer argues that prosecutors lacked standing or authority to prosecute him on behalf of the United States of America, and that various frauds on the Court in this regard led the Court to exercise Article III, § 2 judicial power which had ceased to exist.  Over the years, Mr. Springer has made similar arguments challenging the authority of prosecutors...all of which have been rejected."

Doc. 606, pg. 1.

The Court's reference to what it had rejected can be found in three orders and absolutely none of these three were addressing Fraud upon the Court or the evidence Appellant presented in his Declaration. See Doc. 605 and Exhibits.

The first time the Court rejected anything on the subject of prosecutor's authority was on the January 28, 2010 order. Doc. 293, pg. 12. Appellant had been led to believe, and where the Frauds upon the Court were having their impact, that Woodward was "Acting United States Attorney" pursuant to 28 C.F.R. § 0.136 which reads:

> "Each U.S. Attorney is authorized to designate any assistant Attorney in his office to perform the function and duties of the U.S. Attorney during his absence...as Acting U.S. Attorney..."

45

At no time did Snoke, O'Reilly, or Woodward, respond to Appellant's Motion to Dismiss that Woodward was Acting United States Attorney under 5 U.S.C. § 3345(a)(1). See Doc. 276,

Furthermore, the Court did not address any specific provision of law as it related to Snoke, O'Reilly, or Woodward. Doc. 293, pg. 12-13  The Court was addressing the merits of Appellant's Motion for New Trial and decided that challenges to Woodward's lack of authority should have been made before conviction and "the Court rejects his arguments not only as untimely but also on their merits." Doc. 293, pg. 12-13  No fraud upon the Court was being addressed because that fraud had not been fully discovered yet.  Clearly, the merits would have been different had the Court been aware of the Frauds upon the Court that neither Snoke, O'Reilly, or Woodward, held offices of the United States they purportedly held.  The Court gave no explanation as to its "on their merits" statment other than these three words.

The February 22, 2010 order, Doc. 312, dealt with Article III standing and was addressing Woodward's authority prior to the January 27, 2010 declaration that Mr. Holder appointed Woodward, under 28 U.S.C. § 546(a) and (c)(2), on January 21, 2010.  The question raised was in what capacity Woodward acted as the United States Attorney prior to January 21, 2010.  As the Court can clearly see by the January 27, 2010 response, Doc. 292, pg. 1-2, there is no mention of Woodward's authority and no metion of § 3345(a)(1).  The same response is purely silent as to the authority of Snoke and O'Reilly. Id.

The Court explained in its February 22, 2010 order it was addressing:

"That Thomas Scott Woodward was never authorized to act as United States Attorney in this case; that Mr. Snoke and Mr. O'Reilly also are not authorized to prosecute this action; and that the United States does not have standing to bring criminal charges under Article III."

Doc. 312, pg. 2

The Court then explained that Appellant appeared to argue that because

46

Mr. Woodward has been sworn in as the appointed United States Attorney for the Northern District of Oklahoma, this fact undercuts jurisdiction for the prosecution.  Id.

The Court shows it was only addressing the capacity of Woodward prior to the purported appointment by Mr. Holder under § 546(a) and (c)(2), which we now know never happened, and not the Fraud upon the Court Appellant raised involving Woodward never being appointed by Mr. Holder under 28 U.S.C. §§ 542, 546, and as such, Woodward was never authorized under 5 U.S.C. § 3345(a)(1).

The Court then found:

"The appointment of a previously acting United States Attorney, as a United States Attorney, does not compromise the United States ability to pro-secute this action."

Doc. 312, pg. 2.

Clearly, Woodward did not receive any appointment, as the Court was refer-ring to in the previous sentence, and Woodward never qualified as Acting United States Attorney under § 3345(a)(1).  The Court said it "reject[ed] defendants' argument regarding the lack of authority of Mr. Woodward." Id.  The Court said it also "rejects defendants' argument that Mr. Snoke and Mr. O'Reilly have no authority to prosecute." Id.  The Court explained nothing of how it arrived at its cocnlusions.  Next, the Court, based upon the same words, rejected App-ellant's standing argument. Doc. 312, pg. 3.  Although the Court found Snoke, O'Reilly, and Woodward, were authorized, no where in the record does the Court explain what it was looking at when it derived its conclusions on February 22, 2010.  The only thing the Court could have relied upon is the presumption of regularity.

The Tulsa World reported twice on the intentional nature behind the fail-ure of President Obama to make appointment under 28 U.S.C. § 541, and that the appointment process becamse political.  Doc. 605, Exhibit 1, pgs. 1,2,3  The

47

decision not to make any appointments for United States Attorney, or their

assistants, after President Obama and Mr. Holder were in their respective

Article II, § 2, Cl. 2 offices of the United States, was deliberate, and

the the decision by Snoke, O'Reilly, Woodward, Gallant, Mr. Williams, and Mr.

O'Meilia, was to perpetrate 13 frauds upon the Court to deceive the Court into

an exercise of Article III, § 2 Judicial Jurisdiction and Power that the Cons-

titution and Congress deliberately withheld.

The only other statement the Court made is on March 4, 2014 where it

simply denied and disbarred Appellant's:

> "challenges to the authority or jurisdiction of the United States Attorney
> or any assistant (or any Acting or Special Assistant) United States
> Attorney involved in the prosecution, including Mr. Springer's argument
> that without a properly appointed United States Attorney there can be no
> properly appointed assistants."

Doc. 537, pg. 7.

As this Court can clearly see, whatever it was that the District Court had

previously rejected, whether it was on January 28, 2010 (Doc. 293), February 22,

2010 (Doc. 312), or March 4, 2014 (Doc. 537), there was no finding of any dates

of appointment, no statute identified to which an office was established that

Snoke, O'Reilly, Woodward, or Gallant, were presumptively being found authorized

to hold, and no other facts that would show the 13 Frauds upon the Court pres-

ented in Appellant's Motion (Doc. 604) and Declaration and Exhibits (Doc. 605)

had already been rejected as to their legal arguments.

There is absolutely no words by the District Court either rejecting the

argument that logically flows from the frauds upon the Court or that of any

dispute on the facts of the frauds and their impact on the Court's Article III

Judicial Jurisdiction and Power.

48

(9)  The District Court's "Frivolous" argument determination is
clearly erroneous

There are two kinds of "frivolous." "Factually and legally frivolous."
Neitke v. Williams, 490 U.S. 319, 325(1989).   "Legally frivilous" means none
"of the legal points [are] arguable on their merits." Anders v. California,
368 U.S. 738, 744(1967).  A claim that contains both factual allegations and
legal conclusions "is frivolous where it lacks an arguable basis either in law
or in fact." Appellant's Motion and Declaration are deficient in neither cat-
egory.

The facts are not in dispute and where the officers of the Court lied about
their Officer of the United States status having none of the appointments Snoke,
O'Reilly, Woodward, and Gallant, declared they each possessed, their was no
Article III, §2 standing for any of them to represent the authority of the
United States and resulting in the District Court having  absolutely no Article
III, §§ 1 and 2 Judicial Jurisdiction and Power.  It is the 13 Frauds upon the
Court that prevented the Court from realizing it lacked a live case and contro-
versy.

In in re Springer, 13-5113, order dated September 18, 2013, this Court
granted Appellant permission to proceed in forma pauperis on issues about Wood-
ward, after the Chief Judge approved Appellant's Petition, but denied the merits
based upon there being another remedy.  In U.S. v. Springer, 580 Fed. Appx. 655,
656(10th Cir. 2014)(unpublished), this Court declined to reach the merits of
issues surrounding Woodward's authority, or lack thereof, as an "acting or int-
erim U.S. Attorney."   Appellant's Motion to Enjoin Enforcement of the Judgment
dated April 28, 2010 based upon several Frauds upon the Court with supporting
declaration and 28 Exhibits leaves no person in the position this Court found
Mr. Strong was in Springer. 580 Fed Appx. at 656.  The Tenth Circuit never held
Appellant's claims in Springer were legally frivolous and they were right on

49

point.

**4.   Do you think the district court applied the wrong law? If so, what law do you want applied?   YES, the wrong law was applied.**

Obviously, the District Court applied the wrong law.  Applying no law whatsoever easily qualifies as applying the wrong law because the United States of America is a nation ruled by laws, not men or women.  Appellant has set forth in exhaustive detail the Constitutional provisions and Federal Law to which Appellant's Motion is based along with resulting and logical argument in Section 3 above.  Appellant requests this Court follow the decisions issued by the Supreme Court and this Court to which Appellant's arguments are supported.

**5.   Did the district court incorrectly decide the facts?  If so what facts?  NO, the facts were undisputed and correctly so.**

The facts were undisputed and it can hardly be otherwise.  The evidence is clear and convincing that several frauds upon the Court were committed that led to the April 28, 2010 judgment without which the judgment could never have issued.

**6.   Did the district court fail to consider important grounds for relief?  If so, what grounds?  YES, the district court failed to consider important grounds for relied.**

The District Court failed to consider that its previous rulings were not considering the representations by Snoke, O'Reilly, Woodward, and Gallant, were untrue in regard to their purported appointments to office of the United States. The Court never addressed the several frauds upon the Court in regard to those purported appointments that the presumption of regularity allowed Snoke, O'Reilly, Woodward, and Gallant, to commit without detection.  The Court never addressed what the Article III, § 2 standing of the United States would be based upon to bring and maintain the case that led to the April 28, 2010 judgment if Snoke, O'Reilly, Woodward, and Gallant, were, at their respective times, unauthorized to represent the authority of the United States of America.  There is simply no person to name.

50

**7. Do you feel that there are any other reasons why the district court's judgment was wrong? If so, what? YES,** there are other reasons why the district court's judgment was wrong.

In NLRB v. Canning, 134 S.Ct. 2550(2014) the Supreme Court reversed 3-years of NLRB decisions based upon 3 of its members not being appointed according to Article II, § 2, Cl. 2. The Supreme Court reaffirmed the "duty of the judicial department" to say what the law is, Marbury, 5 U.S. at 137, including the long standing practice. Id. at 2560. In dicta, the Court stated that "Acting Officers may have less authority than Presidential appointments." Id. at 2569 The Court simply failed to follow over 200 years of Supreme Court decisions.

**8. What action do you want this Court to take in your case?**

Appellant requests this Court reverse the District Court's order that states that Appellant's arguments are legally frivolous, accept the facts are not in dispute and that neither Snoke, O'Reilly, Woodward, or Gallant, were authorized to represent that United States of America and this fact had been disguised behind the presumption of regularity given officers of the Court that what they say is true. Appellant requests this Court find the several frauds upon the Court led the Court to exercise Article III, § 2 Judicial Jurisdiction and Power it did not have and order directing the April 28, 2010 Judgment be enjoined from any further enforcement because it was entered without any proper officer of the United States with standing under Article III, § 2. Appellant requests this Court find that the April 28, 2010 Judgment was not final due to the several frauds.

**9. Do you think the court should hear oral argument in this case? If so, why? YES.** oral argument is necessary.

Oral argument may materially assist the Court in fully understanding the issues in this appeal.

_1/12/16_
Date

Reg. # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

51

CERTIFICATE OF SERVICE

I hereby certify that on January /1, 2016, I mailed by U.S. Mail First Class Appellant's Opening Brief to the Clerk of Court, 1823 Stout Street, Denver, Colorado 80257;

I further certify that the following parties are registered ECF users with the Tenth Circuit Court of Appeals and shall receive service of the above Opening Brief through the Court's ECF system:

United States of America
Frank Phillip Cihlar
Gregory Victor Davis
Alexander Patrick Robbins

Server

CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my opening brief is more than 30 pages and that I have counted the number of words and the total is 13,854, which is less than 14,000.  I understand that if my Appellant's opening brief exceeds 14,000 words, my brief may be stricken and the appeal dismissed.

1/12/16
Date

Signature

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on January /2, 2016, I deposited the above opening brief in the U.S. Mailbox located inside FSL La-Tuna to the address of the Clerk listed above.

Declarant

52

UNITED STATES DISTRICT COURT
**NORTHERN DISTRICT OF OKLAHOMA**

IN THE MATTER OF WITHDRAWAL AND )
SUBSTITUTION OF COUNSEL IN CASES )  G.O. 14- 01
REPRESENTED BY PHIL PINNELL )

**FILED**

JAN  8 2014

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### GENERAL ORDER

Before the Court is the matter to withdraw and substitute counsel upon the retirement of

Assistant United States Attorney (AUSA) Phil E. Pinnell.

AUSA T. Scott Woodward has been assigned to the cases formerly represented by AUSA

Pinnel, and orally requests that he be substituted as counsel in these matters. A list of cases is

attached hereto as Exhibit A.

The Court Clerk is therefore directed to withdraw AUSA Pinnell and substitute AUSA

Woodward in the above- referenced cases. Upon withdrawal and substitution, AUSA Woodward

will be deemed to have entered an appearance in those cases.

IT IS SO ORDERED this ___6th___ day of January, 2014.

GREGORY K. FRIZZELL
CHIEF DISTRICT JUDGE

United States District Court
Northern District of Oklahoma
I hereby certify that the foregoing
is a true copy of the original on file
in this court
Phil Lombardi, Clerk
By_____
Deputy

APPENDIX 1