IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) Case No. 15-5109 |
| | ) (09-CR-043) |
| LINDSEY KENT SPRINGER, | ) |
| | ) |
| Defendant-Appellant. | ) |

APPELLANT'S RESPONSE IN OPPOSITION TO
APPELLEE'S MOTION TO DISMISS

Lindsey Kent Springer ("Appellant") files his response in opposition to

Appellee's Motion to Dismiss Appellant's appeal.

Undisputed Facts

1.  On October 7, 2015, Appellant timely filed a Motion to Enjoin Enforcement

of the Judgment dated April 28, 2010 Based Upon Several Frauds Upon the Court.

Doc. 604(hereinafter referred to as "Motion to Enjoin")

2.  Accompanying Appellant's Motion to Enjoin was a Declaration under the pena-

lty of perjury, signed by Appellant, in support of Appellant's Motion to Enjoin

attaching 28 Exhibits showing in undeniable detail the more than thirteen (13)

Frauds Upon the Court committed by Thomas Scott Woodward ("Woodward"), Kenneth

P. Snoke ("Snoke"), Charles A. O'Reilly ("O'Reilly"), Jeffrey A. Gallant

("Gallant"), Danny C. Williams ("Williams"), and others. Doc. 605(hereinafter

referred to as "Declaration of Springer").

3.  On October 20, 2015, United States District Court Judge, Stephen P. Friot,

denied the Motion to Enjoin filed in USA v. Springer, 09-CR-043, stating:

> "Mr. Springer argues that prosecutors lacked standing or authority to
> prosecute him on behalf of the United States of America, and that various
> frauds on the Court in this regard led the Court to exercise Article III,
> § 2 judicial power which had ceased to exist. Over the years, Mr. Springer
> has made similar arguments challenging the authority of prosecutors...all
> of which have been rejected."

Doc. 606, pg. 1

1

4.  Judge Friot concluded, without any analysis whatsoever, nor any citation

to any record, that Appellant's Motion to Enjoin was legally frivolous. Id.

5.  On October 29, 2015, Appellant timely mailed a Notice of Appeal to the

Clerk of Court for the Northern District of Oklahoma. Doc. Doc. 607.

6.  In Appellant's Notice of Appeal, Appellant explained exactly what he was

appealing:

> "("Defendant") hereby files his Notice of Appeal in the above criminal
> case to the United States Court of Appeals for the Tenth Circuit from
> the order denying Defendant's Motion to Enjoin Enforcement of the Judg-
> ment dated April 28, 2010, based upon several Frauds on the Court, dated
> [October] 20, 2015. Doc. 606."

Doc. 607, pg. 1

7.  Appellant then exactly identified the reasons Appellant was appealing:

> "Judge Friot denied the Motion (Doc. 604), which was supported by a
> Declaration of Defendant (Doc. 605), showing from the records of the
> United States Department of Justice and the United States Attorney's
> Office for the Northern District of Oklahoma, that at least 13 Frauds
> were intentionally committed, prior to the April 28, 2010 Judgment
> becoming final, to hide the fact the Court lost Article III, § 2 Judicial
> Power and jurisdiction upon the resignation of David E. O'Meilia as the
> Northern District of Oklahoma's United States Attorney."

Doc. 607, pg. 1.

8.  The Notice of Appeal certifies that all parties are registered ECF users

and that the Clerk of Court would serve the United States of America "through

the ECF System." Doc.607, pg. 2.

9.  The Northern District of Oklahoma docket reflects that both O'Reilly and

Gallant receive electronic filngs in this criminal case on behalf of Williams.

10. On December 1, 2015, Appellant moved the Northern District of Oklahoma

Federal Court for an order granting Leave to Proceed on Appeal Without Pre-

payment of the Costs and Fees in a "Non-PLRA" case. Doc. 611

11. In Appellant's December 1, 2015 Motion for Leave to Proceed In Forma

Pauperis, in answering the question on Form A-14 as to what Appellant's

appeal issues are, Appellant identified them as follows:

(1) Is Defendant's arguments that the Court's Article III Judicial Power ceased upon O'Meilia's resignation, and was only conditioned upon the commission of at least 13 intentional fraudulent representations involving Article III standing by Woodward, Snoke, O'Reilly, Williams, and Gallant, which Defendant clearly rebutted any presumption their representations were in fact true, legally frivolous;

(2) Is a motion to enjoin the enforcement of a fraudulent judgment, procured by fraudulent representation of Article III standing, an exception to the rule of finality and not subject to 28 U.S.C. § 2255's post final judgment remedy;

(3) Is a motion to enjoin enforcement of the judgment for fraudulent representations of Article III standing an issue in equity and not subject to the district court's collateral jurisdiction under § 2255;

(4) Where a judgment procured by fraudulent representations of Article III standing is never final, is the Tenth Circuit's recent divided decision in U.S. v. Williams in opposite to Defendant's equitable motion to enjoin where Williams filed a motion to withdraw his guilty plea and Defendant's motion seeks to enjoin the April 28, 2010 judgment.

Doc. 611, pg. 1-2

12. Appellant's Motion for Leave to Proceed In Forma Pauperis was accompanied by a Certificate of Service which certified that all parties are registered ECF users and shall be served through the ECF system. Doc. 611, pg. 10

13. The certificate certifies the party to be served was the USA. Id.

14. In a letter dated December 4, 2015, the Clerk of the Tenth Circuit, Elizabeth A. Shumaker, explained she sent a copy of her letter to "Frank Phillip Cihlar, Gregory Victor Davis, and Alexander Patrick Robbins."

15. Entry of Appearances were made for the United States of America, in the case herein, by Mr. Davis`and Mr. Robbins in early November, 2015.

16. A briefing schedule was set by the Tenth Circuit by letter dated December 4, 2015.

17. Appellant's opening brief was due to be mailed by January 13, 2016.

18. Appellant timely mailed his opening brief and his Motion to Proceed In Forma Pauperis on January 12, 2016, with a Declaration of Mailing.

19.  The Clerk of Court for the Tenth Circuit docketed Appellant's opening brief and Motion to Proceed In Forma Pauperis on January 19, 2016. Appellee's Motion at 3 and footnote *.

20.  Appellant's Motion for Leave to Proceed In Forma Pauperis in this criminal case, pursuant to Federal Rules of Appellate Procedure Rule 24(a)(5), attached a copy of Appellant's December 1, 2015 Motion for Leave to Proceed In Forma Pauperis as Rule 24(a)(5) required.

21.  In Appellant's opening brief, Appellant identifies the First Issue as follows:

> "Is the argument that various frauds upon the Court that involve the Court's Article III, § 2 judicial power and authority, without which the District Court's Aritcle III, § 2 judicial power and authority either never existed as a live case or controversy, or had become mooted after the case began, and where the lawyers representing the United States of America lacked standing or authority to do so, a frivolous argument?"

Opening Brief at page 21

22.  Appellant argued that the issues surrounding the Frauds Upon the Court raised in Appellant's Motion to Enjoin, and supported by Declaration of Springer, was not frivolous, had legal and factual merit, was unopposed by Plaintiff, that Appellant had rebutted any presumption of regularity afforded Woodward, Snoke, O'Reilly, Gallant, and Williams, and that due to these Frauds Upon the Court, the April 28, 2010 Judgment never became a final order where these lawyers had no Article III, § 2 standing and deprived the District Court of a live case or controversy under Article III, § 2. See Opening Brief, pgs. 21-50.

23.  Purportedly mailed to Appellant on January 21, 2016, and received by Appellant on February 1, 2016, Acting Assistant Attorney General Caroline D. Ciraolo, S. Robert Lyons, Acting Chief, Criminal Appeals & Tax Enforcement Policy Section, Gregory Victor Davis, Tax Division Attorney, and Alexander P. Robbins, Tax Division Attorney, moved to dismiss Appellant's appeal pursuant

to Tenth Circuit Local Rule 27.2(A)(1)(a). Appellee's Motion at 3

24. The Motion to Dismiss argues dismissal is required where "it is barred by
18 U.S.C. § 2255(h), because it violates the filing restrictions this Court
imposed on Springer in 2007, and because it is frivolous." Appellee's Motion
at 1.

25. Appellee argues that the reason they did not file the Motion to Dismiss,
or should not be seen to have forfeited the 14 day limitation without good
cause being shown for such default, is that:

> "The government received Springer's brief via this Court's notice of
> docketing activity on the afternoon of January 19, 2016, and before that
> was unaware of what exactly Springer intended to argue in his appeal. Now
> that it is clear Springer's arguments must be dismissed, we are submitting
> this motion."

Appellee's Motion at 3 and footnote *.

## Issues Presented

The following issues are presented by the untimely Motion to Dismiss:

a.  Whether the Motion to Dismiss should be denied where it is filed more
    than 14 days after Appellant's Notice of Appeal and the reasons given
    for filing the Motion to Dismiss, pursuant to Tenth Circuit Local Rule
    27.2(A)(3)(a), is that Appellee was "unaware of what exactly Springer
    intended to argue in his appeal."

b.  Whether Frauds Upon the Court committed by officers of the Court that
    intended to disguise the fact the District Court's Article III, § 2
    Judicial jurisdiction and power ceased, or never was established, and
    which renders the April 28, 2010 criminal judgment not final, subject
    to the Antiterrorism and Effective Death Penalty Act of 1996, which by
    its terms, applies to judgments that have become final.

c.  Whether this appeal in a criminal case and matter is subject to the
    filing restrictions placed upon Appellant "in a civil matter," by the
    Court's May 1, 2007 order in Springer v. Internal Revenue Service, ex
    rel, United States, 231 Fed. Appx. 793, 802-04(10th Cir. 2007)(unpub-
    lished).

d.  Whether Appellant showed the District Court clearly erred, years ago,
    in rejecting in rejecting Appellant's factual claims, or that the
    district court abused its discretion by rejecting Appellant's allegat-
    ions, years ago, as untimely.

e.  Whether Appelant's appeal is frivolous factually, or legally.

5

Argument

a. The Motion to Dismiss should be denied where it was filed some 80 days after Appellant's Notice of Appeal was timely filed, in violation of Tenth Circuit Local Rule 27.2(A)(3)(a) and its 14 day requirement, and where Appellee presented no good faith reason why that 14 days should be equitably extended after having forfeited its rights under said rule.

Appellee moved to dismiss Appellant's timely criminal appeal arguing that dismissal is appropriate where "it is barred by 18 U.S.C. § 2255(h), because it violates the filing restrictions this Court imposed on Springer in 2007, and because it is frivolous." Motion at 1

Appellee admits that the Motion to Dismiss, pursuant to Tenth Circuit Local Rule 27.2(a)(3)(a), has a 14 day time period "after the notice of appeal is filed."

The docket of this criminal case and matter shows that Appellant's Notice of Appeal was docketed on November 2, 2015. See Doc. 608-1, pg. 58 of 62, Doc. 607.

Although Appellant did not receive Appellee's Motion to Dismiss until February 1, 2016, the Motion contains a Certificate of Service that states Mr. Robbins served "via U.S. mail" on Janaury 21, 2016. Motion at 7 Mr. Robbins does not certify that he mailed the Motion to Appellant on January 21, 2016 as required by Federal Rules of Appellate Procedure Rule 25(d))"by the person who made service certifying...") There is no "I hereby certify..."

Just to show this issue of certification is a consistent problem for lawyers for Appellee, Appellant also draws this Court's attention to the Entry of Appearance of Mr. Lyons, Mr. Davis, and Mr. Robbins, each of which insert Appellant's name in the space entitled "please insert date." No date appears on the Entry of Appearance for when they each were actually mailed to Appellant.

Having said the above, if the date the 14 days begins to run is November 2, 2015, and Appellee's Motion is considered filed on January 21, 2016, by

6

Appellant's calculations, the Motion to Dismiss was filed 80 days after the
Notice of Appeal was docketed.

Tenth Circuit Rule 27.2(A)(3)(a) does provide a limited exception to the
14 day time period where "good cause is shown."

Appellee does not identify any suggestion of any good cause, let alone
showing it.  In fact, the only reason Appellee provides as to why it is now
filing the  Motion to Dismiss can be found in a footnote reading:

> "The government received Springer's brief via this Court's notice of
> docketing activity on the afternoon of January 19, 2016, and before that
> was unaware of what exactly Springer intended to argue in his appeal. Now
> it is clear Springer's arguments must be dismissed, we are submitting this
> motion."

Motion at 3 footnote *

If Rule 27.2(A)(1)(a) was intended to be used after an Appellant files
his opening brief then the drafters would not have placed the variable of
14 days and from when the Notice of Appeal is filed.

Appellee claims it was "unaware of what exactly Springer intended to argue
in his appeal" is frivolous squared.

First, Appellee made no objection to Appellant's Motion to Enjoin, disput-
ing no facts presented in Appellant's declaration (Doc. 605), nor did Appellee
raise any objection to the legal arguments Appellant made in his Motion to
Enjoin (Doc. 604).  That should be the end of Appellee's participation in this
criminal matter and case.

Second, Appellee certainly was served with both Appellant's Motion to Enj-
oin and Declaration by the Clerk of Court, is and was aware of what those fil-
ings presented, and received service of the Court's October 20, 2015 order
electronically.

Appellee certainly was aware of what the Court's denial order said.

Third, Appellant, consistent with the October 20, 2015 denial order,

7

explained in his Notice of Appeal:

> "Judge Friot denied the Motion (Doc. 604), which was supported by a
> Declaration of Defendant (Doc. 605), showing from the records of the
> United States Department of Justice and the United States Attorney's
> Office for the Northern District of Oklahoma, that at least 13 Frauds
> were intentionally committed, prior to the April 28, 2010 Judgment
> becoming final, to hide the fact the Court lost Article III, § 2 Judicial
> Power and jurisdiction upon the resignation of David E. O'Meilia as the
> Northern District of Oklahoma's United States Attorney."

Doc. 607, pg. 1

Appellee clearly received awareness of "exactly" what Appellant "intended
to argue in his appeal." The Notice of Appeal is docketed on November 2, 2015.

But wait, there is more. Appellee  also received service of Appellant's
Motion for Leave to Proceed In Forma Pauperis dated December 1, 2015. In
Appellant's Motion for Leave to Proceed In Forma Pauperis, Appellant lists
4 issues intended to be raised and argued in this appeal. See Fact's Section
above at ¶ 11, (1) through (4). See Doc. 611, pg. 1-2

Appellee wishes this Court to conclude that it could not "exactly" deter-
mine what Appellant intended to "argue in his appeal," but Judge Friot certainly
could.

Judge Friot explained the "issues which Mr. Springer appeals involve alle-
ged frauds on the Court pertaining, for example, to Mr. Springer's contention
that prosecutors lacked standing or authority to prosecute him on behalf of
the United States, and to his contention that the court exercised judicial
power which had ceased to exist." Doc. 612, pg. 1

Judge Friot's order was dated December 10, 2015. Id.

Between Appellant's Motion to Enjoin (Doc. 604), Declaration of Springer
(Doc. 605), Judge Friot's October 20, 2015 Order denying Appellant's Motion to
enjoin (Doc. 606), Appellant's Notice of Appeal (Doc. 607), Appellant's Motion
for Leave to Proceed In Forma Pauperis (Doc. 611), and Judge Friot's Order on
that Motion (Doc. 612), Appellee **knew** "exactly" what Appellant intended to
raise in this appeal.

Appellee offers no showing of surprise in what Appellant raised in his opening brief from that of Doc. 604, 605, 606, 607, 611, and 612. In fact, Appellee makes no showing of good cause whatsoever in their Motion to Dismiss.

This Court should easily find that Appellee has improperly used Local Rule 27.2(A)(1)(a), in violation of Local Rule 27.2(A)(3)(a), and without providing any good cause showing why they could not have filed the Motion to Dismiss with 14 days of November 2, 2015. The Motion should be denied for this reason alone.

b. Appellant's Motion to Enjoin, and this Appeal, are not subject to the AEDPA, and the Judgment dated April 28, 2010, never became final.

The three issues Appellee asserts the United States of America was "unaware of" prior to January 19, 2016, are that Appellant's appeal of Judge Friot's October 20, 2015 order denying enjoining enforcement of the April 28, 2010 Judgment based upon at least 13 frauds upon the Court "is barred by 18 U.S.C. § 2255(h), because it violates the filing restrictions this Court imposed on Springer in 2007, and because it is frivolous." Motion at 1.

> (i) Although Appellant's appeal in this criminal matter and case is not barred by 18 U.S.C. § 2255(h), the argument Appellee raises was clearly available within 14 days of the filing of Appellant's Notice of Appeal.

Clearly, Appellee knew this first issue it raises in its 66 day late Motion to Dismiss is so frivolous that it forfeited this claim showing no good cause otherwise.

> (a) Appellee argues that Appellant cites no rule that provides the relief sought is frivolous.

Obviously, by Appellee pointing to Appellant's brief at page 43, Motion at 3, they are trying to avoid addressing the merits of Appellant's claims both in the District Court and now in this appeal.

Appellee's attempt to limit the authority for the relief Appellant seeks to a "rule" is ambiguous and also frivolous.

9

Beginning on page 40 of Appellant's opening brief, Appellant quotes the Tenth Circuit in Robinson v. Audi AKT., 56 F.3d 1259, 1265(10th Cir. 1995) states:

"One long recognized exception to the general rule of finality is where a judgment was based on a claim that the party obtaining the judgment knew it to be fraudulent."

The Tenth Circuit in U.S. v. Williams, 790 F.3d 1059, 1071(10th Cir. 2015),the Panel, quoting Kemmer v. CIR, 387 F.2d 689, 691(7th Cir. 1968), held "'decisions produced by Fraud [upon] the Court is not in essence a decision at all and never becomes final.'" Opening Brief at 40

Appellant also identified the Tenth Circuit's unpublished decision in Simmons v. CIR, 1999 U.S. App. Lexis 15672(10th Cir. 1999) citing to Billing-sley v. CIR, 868 F.2d 1081, 1084-85(10th Cir. 1989), where the Tenth Circuit held that when a decision or judgment is entered in the absence of jurisdiction, such a judgment "is not a decision at all, therefore, never becomes final." Id. at 40

Appellant also cited to United Business Communications Inc., v. Racal-Milgo, Inc., 591 F. Supp. 1172, 1183(D.Kansas 1984) where that Court held "Federal Courts have long recognized fraud on the Court as an exception to the doctrine of finality of judgment." Opening Brief at 41

Fraud upon the Court "is a condition that renders the judgment unenforceable" the Supreme Court held in United Student Aid Funds, Inc., v. Espinoza, 176 L. Ed 2d 158, 169(2010). Id at 41 "Fraud," the Supreme Court held in U.S. v. Throckmorton, 98 U.S. (8 Otto) 61, 64, 25 L.Ed 93(1878), "vitiates the most solemn contracts, documents, and even judgments." Id. at 41

One such fraud, as the 13 or more Frauds upon the Court shown by Appellant in his Motion to Enjoin and Declaration, is "where an attorney fraudulently or without authority assumes to represent a party..." Throckmorton, 98 U.S. at 65-66. Id. at 41.

The Throckmorton  Supreme Court found "nothing in the bill to indicate
to the Court that it ever receivbed the sanction of the Attorney General, or
was brought at his direction."  98 U.S. at 70; Id. at 41

"No fraud is more odious than an attempt to subvert the administration of
justice."  Hazel-Atlas Glass Co., v. Hartford Co., 322 U.S. 238, 251, 88 L.Ed.
1250, 64 S.Ct. 997(1944)(Roberts J. dissenting).  Id. at 41

> "Tampering with the administration of justice in the manner indisputably
> shown here involves far more than an injury to a single litigant.  It is
> a wrong against the institutions set up to protect and safeguard the
> public, institutions in which fraud cannot complacently be tolerated,
> consistently with the good order of society."

Hazel-Atlas at 246; cited in the opening brief at 41

The historic power of equity provides where a judgment obtained by per-
petuating frauds upon the Court, that Court is authorized to enjoin enforcement
of the Judgment.  Carlin v. McKean, 823 F.2d 620, 624-25(D.C. Cir. 1987) citing
Hazel-Atlas, at 244-46 and Throckmorton, 98 U.S. at 64-69.

"Federal Courts, both trial and appellate, long ago established the general
rule that they would not alter or set aside their judgments after the expirat-
ion of the term at which the judgments were finally entered."  Hazel-Atlas,
322 U.S. at 244; Opening Brief at 41

"This salutory general rule springs from the belief that in most instances
society is best served by putting an end to litigation after a case has been
tried and judgment entered."  Id.

"This has not meant," the Supreme Court in Hazel-Atlas said, that a "judg-
ment finally entered has ever been regarded as completely immune from impeach-
ment after the term."  Id.

"From the beginning there has existed alongside the term rule a rule of
equity to the effect that under certain circumstances, one of which is after
discovered fraud, relief will be granted against judgments regardless of the

term of their entry." Id.

This equity rule, which was firmly established in English practice long before the foundation of the Repulic, the Courts have developed and fashioned to fulfill a universaly recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand departure from the rigid adherence to the term rule." Id.

"[w]here the occasion has demanded, where enforcement of the judgment is 'manifestly unconcionable,'...they have wielded the power without hesitation." Hazel-Atlas, 322 U.S. at 245.

In Hazel Atlas, the Court found a fraud upon the Court that was "deliberatley planned and carefully executed scheme to defraud...the Circuit Court of Appeals." Id. at 245-246; Opening Brief at 41.

"Fraud upon the Court should...embrace only that specie of fraud which does, or attempts to, defile the Court itself, or is a fraud perpetrated by officers of the Court so that the judicial machinery cannot perform in the usual manner." Alexander v. Robertson, 882 F.2d 421, 424(9th Cir. 1989); Id. at 41. The frauds upon the Court in this case clearly defile the Court.

Appellant showed the equity rule that the Supreme Court held existed before the foundation of the United States originally reached extrinsic fraud "that infects the actual judicial process," was "grounds to set aside the judgment procured by fraud." Browning v. Navarro, 826 F.2d 335, 344(5th Cir. 1987) citing to Throckmorton, supra. It is the decision in Hazel-Atlas that expanded the equity rule against finality to include intrinsic frauds upon the Court by its officers. Geo P. Reintjes, Co. v. Riley Stoker Corp.. 71 F.3d 44, 47-48(1st Cir. 1995). Opening Brief at 42

The Tenth Circuit held in Plotner v. A T & T Corp., 224 F.3d 1161, 1170 (10th Cir. 2000), that this fraud upon the Court includes "misrepresentations

directly affecting the judicial process." Id. at 42

Appellant also cited to Bulloch v. U.S., 763 F.2d 1115, 1121(10th Cir. 1985)(en banc), in which the Tenth Circuit held "Fraud on the Court (other than fraud as to jurisdiction)...is...Fraud...where...a member is corrupted..." Id. at 42.

And the Courts agree, consistent with Throckmorton, that attorneys are officers of the Court and their conduct, if dishonest, would constitute fraud upon the Court. See H.K. Porter Co., Inc. v. Goodyear Tire and Rubber Co., 536 F.2d 1115, 1119(6th Cir. 1976); see also Gleason v. Jandrucko, 860 F.2d 556, 560(2nd Cir. 1988)(such fraud may subvert the integrity of the Court itself, or is perpetrated by officers of the Court.)

"Litigants," like Appellant, who "have sought to invoke this equity power customarily have done so...by original proceedings to enjoin enforcement of the judgment." Hazel-Atlas, 322 U.S. at 245.

Appellee simply ignores itself. In Hazel-Atlas, the Supreme Court explained the equity relief rule:

"Equitable relief against fraudulent judgments is not a statutory creation. It is a judicially devised rememdy fashioned to relieve hardships...from ....another Court made rule...that judgments should be be disturbed..."

Hazel-Atlas, 322 U.S. at 348; Opening Brief at 43.

Appellant cited to U.S. v. Buck, 281 F.3d 1336, 1342(10th Cir. 2002) show-the Tenth Circuit had held there was "no time limit for such proceedings, nor does the doctrine of laches apply." Opening Brief at 43. The Court in Buck also held there are "no formal requirements for asserting a claim of fraud upon the Court. Id.

"It is the power of the Court to correct the judgment gained through the fraud which is determinative and not the nature of the proceedings in which the fraud was committed." So says the Seventh Circuit in U.S. v. Bishop, 774 F.2d 771, 774(n.5)(7th Cir. 1985)

"It would defile the equitable foundations of the doctrine of res judicata to suggest that a fraudulently obtained judgment must be entitled to preclusive effect in the very court where the fraud was perpetrated, and thereby prevent litigation on the fraud issue." United Business, 591 F. Supp. at 1183.

Appellee's dismissal argument that Appellant cited to "no rule that provides the relief he seeks," is simply silly and the kind of argument one would expect from a party or persons who have perpetrated a fraud upon the Court, even into the Tenth Circuit, and have admitted as much in the procedure they choose to disregard.

Appellee's argument is frivolous squared.

> (b) Appellee argues this Court in Williams limited the Court's power to consider claims of fraud "on the Court" in criminal cases, rejecting labeling, is not applicable to the type of Frauds Upon the Court Appellee has admitted was committed in the Northern District of Oklahoma and into this Court and the AEDPA is no bar to equitable relief.

Appellee argues this Court in Williams "limits the court's power to consider claims of fraud on the Court in criminal cases." Motion at 4. That term "criminal case" will become an important term later on in the response.

Equitable powers are "exercised 'without any express authorization in a constitution, statute, or written rule of court.'" Williams, 790 F.3d at 1069

In McQuiggin v. Perkins, 133 S.Ct. 1924, 1934, 185 L.Ed 1019(2013)(quoting Holland v. Florida, 560 U.S. 631, 646, 130 S.Ct. 2549, 177 L.Ed 2d 130(2010), the Supreme Court instructed all Article III Courts that the AEDPA cannot "displace courts' traditional equitable authority absent the clearest command." Williams, 790 F.3d at 1072 and (n.10).

The issue in McQuiggin was "whether AEDPA's statute of limitations can be overcome by a showing of actual innocence." 185 L.ED. 2d at 1029 The rule of actual innocence, the Supreme Court said, "or fundamental miscarriage of justice exception," are "grounded in the equitable discretion.." Id. at 1031

14

The "miscarriage of justice exception" the Supreme Court applied "to overcome various procedural defaults." Id. Procedural defaults included "successive" petitions asserting a previously rejected claim, see Kuhlman v. Wilson, 477 U.S. 436, 454, 106 S.Ct. 2016, 91 L.Ed 2d 364(1986), "abusive" petitions asserting in a second petition claims that could have been raised in the first petition, see McClesky v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 113 L.Ed 2d 517(1991), failing to develope facts in State Court, see Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12, 112 S.Ct. 1715, 118 L.Ed 2d 318 (1992), and failure to observe State procedural rules, including filing dead-lines, see Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed 2d 640(1991); Murray v. Carrier, 477 U.S. 478, 495-96, 91 L.Ed 2d 397, 106 S.Ct. 2639(1986).

"The miscarriage of justice exception, our decision bear out, survived AEDPA's passage." McQuiggin, 185 L.Ed 2d at 1031.

There is no question the frauds upon the Court shown by Appellant have continued from at least March 10, 2009, or as early as January 23, 2009, thr-ough the filing of this response opposing Appellee's Motion to Dismiss. In fact, Appellee's Counsel, in filing the Motion to Dismiss, have taken steps to preserve the Fraud Upon the District Court and this Court. See Williams, 790 F.3d at 1072(n.11). This Motion is only to delay the results the frauds upon the Court have caused.

The Supreme Court held that its decisions in equity that survived the AEDPA's passage, including 28 U.S.C. § 2255(a) through (h), "seek to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extra-ordinary case." McQuiggin, 185 L.Ed. 2d at 1031.

It is difficult, if not impossible to imagine, how a jury would have ever

convicted Appellant of anything had, on the first day of trial, no authorized representative for the United States of America appeared to try the March 10, 2009 indictment, or the lawyers admitted their authority did not exist.

What if no attorney showed up on March 10, 2009 to present a case for the Grand Jury to consider, as Federal Rules of Criminal Procedure 6 and 7 require? What would happen if the United States opposed none of Appellant's Motions to Dismiss? Would the Judge have allowed the case to move forward without an attorney speaking on behalf of the United States of America? Absolutely not!

Who would ask the questions or present the witnesses to the Jury? How would the witnesses get there?

President Obama deliberately chose not to appoint a United States Attorney for the Northern District of Oklahoma and Eric H. Holder Jr. deliberately did not make any appointments under 28 U.S.C. § 542(a), § 543(a), or § 546(a) and (c)(2), in order to pursuade Oklahoma's two U.S. Senators to relent to his choice for United States Attorney. See Doc. 605, pg. 1 and Exhibit 1, pgs. 1 through 3 ("The Obama administration and Oklahoma's two Republican senators had been unable to agree on a nominee until Williams' name was put forward in March [2012].") As of January 9, 2011, the Tulsa World reported that the U.S. Attorney post in Tulsa "remained unfilled." Id. at pg. 2 of 3

Despite the public being told these areas of disagreement that left the Artilce II, § 2, Cl. 2 office empty, Woodward, Snoke, O'Reilly, and Gallant, at various times presented Woodward and Snoke as Assistant United States Attorneys for the Northern District of Oklahoma, between January 23, 2009 to present day, presented Woodward as O'Meilia's First Assistant United States Attorney, pursuant to 5 U.S.C. § 3345(a)(1), as of March 3, 2009 through June 28, 2009, presented Woodward as Mr. Holder's 28 U.S.C. § 546(a) and (c)(2) appointee on January 21, 2010, for the Northern District of Oklahoma, which

then led to Judge Eagan making an order of appointment naming Woodward under 28 U.S.C. § 546(d), beginning May 25, 2010, after the disagreement between the President and Oklahoma's two Republican senators continued. Opening Brief at 4-5.

It is important to remember when terms of office expire for Article II, § 2, Cl. 2 inferior officers, such as Assistant United States Attorney and Special Assistant United States Attorneys. Where an "Act is silent as to their terms of office," like the offices created under 28 U.S.C. §§ 542(a) and 543(a), "they can presumably be appointed for any term not exceeding that of the officer appointing them." De Castro v. Board of Commissions, 322 U.S. 451, 462, 88 L.Ed 1384, 64 S.Ct. 1121(1944).

Mr. Holder was appointed on or about January 23, 2009, and all the terms of office of those Assistant United States Attorneys under President Bush's Attorney General expired when Mr. Holder's term began. See Opening Brief at 33-38,

Neither Snoke, O'Reilly, Woodward, or Gallant received appointment to Article II, § 2, Cl. 2 office under 28 U.S.C. §§ 542, 543, 546(a) and (c)(2), or 5 U.S.C. § 3345(a)(1).

Appellee cannot and could not dispute the facts of the frauds upon the Court shown by Appellant, discovered through the Freedom of Information Act, revealing that Article III, § 2 standing either did not exist, or ceased to exist, disguising the fact the district court's Article III,§ 2 Judicial power and jurisdiction has ceased, or never existed.

The Tenth Circuit's decisions in Williams, 790 F.3d 1059, relies on its decision in U.S. v. Baker, 718 F.3d 1204, 1205-08(10th Cir. 2013), which relies on Berryhill v. Evans, 466 F.3d 934, 937-38(10th Cir. 2006), and the reasoning by the Supreme Court in Gonzales v. Crosby, 545 U.S. 524, 538, 125 S.Ct. 2641,

162 L.ed 2d 480(2005). The Baker Court also relied upon Spitzna v. Boone, 464 F.3d 1213, 1216(10th Cir. 2006) and distinguished In Re Weatherby, 717 F.3d 1108, 1111(10th Cir. 2013)

Although this Court relied upon these cases and their conclusions in arriving at the decision in Williams, 790 F.3d at 1071-1073, the decision in McQuiggin, decided after Baker, Berryhill, Spitznas, Weatherby, and Gonzales, clearly held the Court's equitable power was not displaced by 28 U.S.C. § 2255, including § 2255(h), and the AEDPA, and such equitable authority "survived AEDPA's passage." 185 L.Ed 2d at 1031

If this Court were inclined to continue in this case with Williams, and its acceptance of Baker, Berryhill, Spitnas, and Gonzales, instead of McQuiggin, Appellant requests this Court find that McQuiggin cast pure doubt on these aforementioned cases, and hold that the AEDPA, including 28 U.S.C. § 2255, are not bars to Appellant's equitable Motion to Enjoin Enforcement of the Judgment dated April 28, 2010, Based Upon Several Frauds Upon the Court involving the standing of the lawyers representing the United States of America, as officers of the Court, and the District Court's otherwise lack of Article III, § 2 Judicial Power and Jurisdiction.

Appellant requests this Court deny Appellee's Motion to Dismiss on the issue addressed above and find that the AEDPA is not a bar to Appellant's Motion to Enjoin (Doc. 604).

> (iii) Appellee's argument that Appellant made no attempt to comply with the AEDPA's procedural requirements, nor made any showing that would justify obtaining a COA is both untrue and not applicable.

Appellee argues Appellant made no attempt to comply with the AEDPA, nor made a showing that would justify obtaining a COA. Motion at 4

Both are completely in error. In In Re Weathersby, 717 F.3d at 111, the Tenth Circuit listed cases that held "if the purported defect did not arise,

or the claim did not ripen, until after the conclusion of the previous pet-
ition, the later petition based on the defect may be non-successive." (coll-
ecting cases). The Court applied this reasoning to 28 U.S.C. § 2255(h) and
that a second motion "did not require the Court's prior authorization. 717
F.3d at 1111

The procedural posturing Appellee attempts to inject in this Appeal, to
evade having to answer to the 13 Frauds Upon the District Court, and this
Court, is not what equity allows. Equity does not allow the lawyers repre-
senting the lawyers who perpetrated the several Frauds Upon the Court in effort to
manufacture Article III standing and Judicial Power that otherwise did not exist,
to use the equitable power to prevent this Court from reaching the merits of
Woodward, Snoke, O'Reilly, Gallant, and Williams' Frauds Upon the District
Court and this Court.

Judge Friot obviously did not rule that Appellant's Motion to Enjoin was
second or successive, or subject to the AEDPA. Judge Friot accepted the facts
as true, that Woodward, Snoke, O'Reilly, Gallant, and Williams, had committed
the 13 Frauds Upon the Court, but denied the Motion based upon previous argu-
ments, not including the evidence of the actual frauds upon the Court, that
Judge Friot and this Court were previously presented.

Appellant filed his Motion to Enjoin within one month of receiving the
Declaration from Ms. Princia Stone and Linda M. Richardson, that explained
the United States Department of Justice, nor Williams' agency, could locate
any records showing Woodward's various purported appointments, Snoke's purported
appointment, O'Reilly's purported various appointments, or Gallant's purported
appointment.

Had the Department of Justice responded to Appellant's October 9, 2013
FOIA requests in a timely manner, which is 20 days under 5 U.S.C. § 552, App-

19

ellant **could** present the frauds committed by Woodward and O'Reilly during the § 2255 proceeding. The Department of Justice simply stretched out the time period to respond until after Judge Friot ruled on Appellant's § 2255. Compare August 22, 2014 order, Doc. 584,585, with EOUSA's September 17, 2014 response involving Woodward's purported appointment to office as United States Attorney, See Doc. 605, pg. 3-4 and Exhibit 9, pg. 1 of 4 and 4 of 4 (FOIA No. 2014-00169). The October 9, 2013 FOIA request to the Executive Office of United States Attorneys ("EOUSA") is at Doc. 605, pg. 3 and Exhibit 8.

Appellee argues that "Springer's claim of fraud is that the government attorneys who prosecuted him lacked authority to do so--the same argument Springer made at various points before and during trial...(see D.Ct. Docket nos. 293, 312)..." Motion at 2.

There is so much wrong with the above statement by Appellee's counsel. The evidence, which Appellee dare not dispute, nor has disputed, is that the lawyers who purported to be properly appointed under 28 U.S.C. §§ 542(a), 543-(a), 546(a) and (c)(2), and 5 U.S.C. § 3345(a)(1), in fact hid behind the presumption of regularity that if each of them, i.e. Woodward, Snoke, O'Reilly, or Gallant, said they were appointed as Assistant United States Attorneys, Special Assistant United States Attorneys, or as in the case of Woodward, O'Meilia's First Assistant under 5 U.S.C. § 3345(a)(1) between March 3, 2009 to January 21, 2010, that their representations to the Court were true. See U.S. v. Chemical Foundation, 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed 131(1926)("presumption of regularity [that] supports the official acts of public officers and, in the absence of clear evidence to the contrary, Courts presume they have properly discharged their official duties."); See also U.S. Postal Service v. Gregory, 534 U.S. 1, 10, 122 S.Ct. 431, 151 L.Ed 2d 323(2001).

Appellee, and the officers of this Court that represent it, know full well

that the only evidence presented in 2009 and 2010 in the District Court in regard to Woodward's purported appointment as an Assistant United States Attorney for the Northern District of Oklahoma, after January 20, 2009, or his purported appointment as "First Assistant" to O'Meilia between March 3, 2009 to June 28, 2009 when O'Meilia resigned, pursuant to 5 U.S.C. § 3345(a)(1), and the subsequent purported claim Woodward was authorized by 5 U.S.C. § 3345(a)(1), between June 28, 2009 to January 21, 2010 as the Northern District's Acting United States Attorney, or Woodward's purported appointment by Mr. Holder, on or before January 21, 2010 as the Northern District of Oklahoma's United States Attorney, pursuant to 28 U.S.C. §§ 546(a) and (c)(2), are statements made by Woodward, Snoke, O'Reilly, Gallant, and Williams, and never having to show any evidence in support of such claims.

The same goes for O'Reilly, Snoke, and Gallant. "To reject the AUSA's representations is not only to ignore 'the presumption of regularity recognized in Armstrong, 517 U.S. at 464, but to disregard the AUSA's duty as an attorney." U.S. v. Deberry, 430 F.3d 1294, 1300(10th Cir. 2005) "Attorneys are officers of the Court and when they address the Judge solemnly upon a matter before the Court, their declarations are virtually made under oath." Id. citing Holloway v. Arkansas, 435 U.S. 475, 486(1978).

"No man [or woman] in this Country is so high that he is above the law. No officer of the law may set that law at defiance, with impunity. All officers of the Government, from the highest to the lowest, are creatures of the law and are bound to obey it." U.S. v. Lee, 106 U.S. 196, 220, 27 L.Ed. 171, 182(1882).

What Appellee is truly arguing is that Assistant United States Attorneys and Special Assistant United States Attorneys need no appointment and should be considered nonetheless appointed for life.

Yet, the Supreme Court held in De Castro, 322 U.S. at 462, all Article II, § 2, Cl. 2 inferior office holders to which the act establishing their office is "silent as to their term of office," the term of such officer is not to exceed the term of the officer appointing them. See also Kalaris v. Donuvan, 679 F.2d 376, 397(D.C. Cir. 1982)("absence of Congressional statute to the contrary, inferior officers....serve...at the discretion of their appointing officer." Opening Brief at 33-34

Appellant clearly presented indisputable evidence that neither Woodward, Snoke, O'Reilly, or Gallant, as of January 23, 2009 to present, are or qualify as "government attorneys."

Neither Judge Friot, nor Appellee, ever argued in the District Court that Appellant's Motion was subject to the AEDPA's procedural requirements and nor would that silence ever translate to the need for Appellant to obtain a COA to appeal Judge Friot's October 20, 2013 order on its merits.

In Appellant's opening brief, Appellant argued that:

"28 U.S.C. § 2255 motion procedure only applied to final judgment and the April 28, 2010 Judgment is not final due to the undisputed Frauds upon the Court to which it [the Judgment] relies."

brief at 44

The Tenth Circuit in Prost v. Anderson, 636 F.3d 578, 583(10th Cir. 2011) held that "[T]he plain language of § 2255 means what it says and says what it means." See also Wall v. Kholi, 131 S.Ct. 1278, 1284(2010)(§ 2255 words are to be given their common meaning).

28 U.S.C. § 2255(f) clearly states that § 2255 only applies 1-year from "the date on which the Judgment of conviction becomes final." A § 2255 motion is precluded "while review of the direct appeal is pending." U.S. v. Cook, 997 F.2d 1312, 1319(10th Cir. 1993).

A judgment "produced by Fraud [upon] the Court is not in essence a decis-

ion at all and never becomes final." Williams, 790 F.3d at 1071, quoting from Kemmer, 387 F.2d at 691. A judgment entered in the absence of jurisdiction "is not a decision at all, therefore, never becomes final." Simmons, 1999 U.S. App. Lexis 15672 citing Billingsly, 868 F.2d at 1084-85. Such judgment secured by Fraud "is a condition that renders the judgment unenforceable." United Student Aid Funds, 176 L.Ed. 2d at 169. Fraud vitiates judgments. Throckmorton, 98 U.S. at 64. This case involves fraud as to the Jurisdiction and judicial power of the Court to do anything. Bulloch, 763 F.2d at 1121. "It is the power of the Court to correct the judgment gained through the fraud which is determinative and not the nature of the proceedings in which the fraud was committed." Bishop, 774 F.2d at 774 and (n.5).

Clearly, the equity rule is not barred by § 2255, see McQuiggin, 133 S.Ct. at 1934, and § 2255 only applies to judgments that are final and a judgment obtaind by Fraud upon the Court that disguised the lack of Article III standing and Judicial Power and jurisdiction never becomes final.

c.   The Motion to Enjoin in the District Court, and this Appeal, is not a "civil matter" under this Court's May 1, 2007 order under 28 U.S.C. § 1651(a).

Appellee argues that Appellant's Motion to Enjoin filed in the District Court, (Doc. 604), was a civil matter, not criminal, and that this appeal therefore, is also a civil matter. Motion at 4

Appellee's argument is premised totally upon this Court's order in U.S.A. v. Springer, 14-5109 in Appellant's Application for a Certificate of Appealability, which this Court denied a COA on February 25, 2015. However, this Court granted Appellant permission to proceed pro-se on September 22, 2014 in 14-5109.

Appellee argues that because this Court's September 14, 2014 order granting Appellant permission to proceed Pro-Se applied the filing restrictions to

Appellant's Application for a COA, that "therefore necessarily apply to any 'independent action' that Springer might be able to bring under a fraud-on-the court theory to attack his underlying convictions." Motion at 4-5

As a result, Appellee argues, "Springer has completely ignored this Court's filing restrictions." Id.

To determine whether this appeal is a noncriminal, i.e. civil, matter, requires to look to the proceedings in the District Court.

First, in 14-5109, Appellant filed the Petition to Proceed Pro-Se out of an abundance of caution due to the confusion one would gather from the Tenth Circuit's decisions on the type of matter a § 2255 motion is in.

To understand this Circuit Split begins with U.S. v. Hayman, 342 U.S. 205, 220, 72 S.Ct. 263, 96 L.Ed 232(1952), where the Supreme Court reversed the Ninth Circuit's decision that held § 2255 suspended the Writ of Habeas Corpus. The Supreme Court reversed holding that a motion filed under 28 U.S.C. § 2255 "is not a habeas corpus proceeding." see In Re Hanserd, 123 F.3d 922, 925(6th Cir. 1997); see also Brown v. U.S., 748 F.3d 1045, 1060(11th Cir. 2014).

In U.S. v. Cook, 997 F.2d 1312, 1319(10th Cir. 1993) the Tenth Circuit held that a § 2255 motion is the "continuation of the same criminal matter..." See also U.S. v. Simmonds, 111 F.3d 737, 742(10th Cir. 1997) The Tenth Circuit held a motion filed in a criminal case under § 2255 "is technically not a habeas proceeding, but is instead a motion attacking Defendant's sentence." Cook, 997 F.2d at 1316(n.3).

"[a] motion under 28 U.S.C. § 2255...is entered on the docket of the original criminal case." Wall v. Kholi, 562 U.S.___, 131 S.Ct.___, 179 L.Ed 2d 252, 266(2011).

In U.S. v. Bergman, 746 F.3d 1128, 1130-31(10th Cir. 2014) the Tenth

24

Circuit held:

> "of course, § 2255 proceedings are often docketed as separate civil
> cases. But on this account, they remain part of the underlying criminal
> prosecution all the same."

In Williams v. U.S., 984 F.2d 28, 30(2nd Cir. 1993), the Second Circuit
held that a § 2255 motion remedy is a continuation of the same criminal case.
See also U.S. v. Martin, 226 F.3d 1042, 1047(n.7)(9th Cir. 2000); and see
U.S. v. Quinn, 836 F.2d 654, 655-56(n.2)(1st Cir. 1988)

A "motion," called for under § 2255, is a document filed in a pre-existing
matter. The Third Circuit in U.S. v. Thomas, 713 F.3d 165, 172-73(3rd Cir.
2012) followed Cook and held a motion under § 2255 is "part of a defendant's
underlying criminal case."

The Supreme Court's "promulgation of the Rules Governing § 2255 proceedings
indicated the court's abandonment of its prior view that a § 2255 motion was
a separate civil action." Thomas, 713 F.3d at 173; citing to Cook, 997 F.2d at
1319; citing Williams, 984 F.2d at 30. But see Simmonds, 111 F.3d at 743("The
fact that the nature of habeas and § 2255 proceedings is one of consistent
inconsistency, however, does not trouble us, for in some instances, '[a] foolish
consistency is the hobgoblin of little minds, adored by little statesman and
philosophers and devines." Id. at 743.

Appellant's appeal stems from an order in 09-CR-043. Doc. 606. The "CR"
stands for "criminal" and by criminal meaning noncivil matter. The Motion to
Enjoin, Doc. 604, and the Declaration of Springer, Doc. 605, were both filed
in the criminal matter, 09-CR-043, and sought to enjoin enforcement of the
April 28, 2010 Judgment due to later discovered frauds upon the Court by offic-
ers of the Court who had been denied appointment to office of Assistant United
States Attorney, or Special Assistant United States Attorney, by the Attorney
General at the direction of the President of the United States.

In Williams,790 F.3d at 1071, the Tenth Circuit, citing to Kemmer, 387
F.2d at 691, concluded that "decisions produced by Fraud [upon] the Court is
not in essence a decision at all and never becomes final.'" Opening Brief at
40. The same holds true when a judgment is entered in the absence of juris-
diction, such judgment "is ot a decision at all, therefore, never becomes
final." Simmons, 1999 U.S. App. Lexis 15672 citing Billingsly, 868 F.2d at 1084-
85. The Frauds upon the Court Appellant has clealry shown in the District Court
vitiate the April 28, 2010 judgment. Throckmortaon, 98 U.S. at 64. Such frauds
are a "condition that renders a jdugment unenforceable." United Student Aid
Funds, 176 L.Ed 2d at 169.

The relief, the Supreme Court held, involving Frauds upon the Court, is
properly entitled "MOTION TO ENJOIN ENFORCEMENT OF THE JUDGMENT." Hazel-Atlas,
322 U.S. at 245. The jurisdiction of the Court is of the Court where the
fraud was employed to obtain the judgment. See Cobell v. Norton, 226 F. Supp.
2d 1, 25(D.C.D.C. 2002) citing Hazel-Atlas, 322 U.S. at 244   The jurisdiction
"may be regarded as ancillary to the...suit, so that relief asked may be granted
by the Court which made the decree..." U.S. v. Beggerly, 524 U.S. 38, 46, 118
S.Ct. 1862, 141 L.Ed 2d 32(1998) citing Pacific R.R. of Missouri v. Pacific
R. Co., 111 U.S. 505, 522, 28 L.Ed 498, 4 S.Ct. 583(1884); see also Carlin,
823 F.2d at 624-625, citing to Hazel-Atlas, at 244-246 and Throckmorton, 98
U.S. at 64-69(where a judgment obtained by perpetuating frauds upon the Court,
it is that Court which is authorized to enjoin enforcement of its Judgment)

The basis for the District Court's jurisdiction, which sets in motion
the jurisdiction of the Tenth Circuit, is the jurisdiction relied upon to
enter the fraudulent judgment. Switzer v. Coan, 261 F.3d 985, 988(n.5)(10th
Cir. 2001).

Appellant's Motion to Enjoin is a criminal matter, in a criminal case,

and not a civil matter subject to the May 1, 2007 § 1651(a) injunction app-
licable to civil matters. Even if this were a new civil case, and it is not,
the matters remain criminal in nature.

This Court should deny the Motion to Dismiss for the reasons this matter
on appeal is criminal, not civil, and the District Court relied upon its crim-
inal jurisdiction to deny the Motion to Enjoin.

d.  This Appeal is not only not frivolous, Appellant is indisputably correct
    on the facts and the only reason for dismissal was the District Court's
    reliance upon previous statements of those facts, before the frauds were
    fully discovered, and where the Court's legally frivolous determination
    is clearly erroneous.

Appellee argues that Appellant's "appeal is frivolous on the merits."
Motion at 5. Appellant argues in his factually undisputed claims of Frauds
upon the Court are not legally frivolous. Opening Brief at 49.

Under Tenth Circuit Local Rule 27.2(A)(1)(a), motions to dismiss an appeal
is authorized "only on the basis of lack of jurisdiction, supervening change in
law or mootness, or need for additional district court proceedings." Bartell
v. Aurora Pub. Sch., 263 F.3d 1143, 1146(10th Cir. 2001).

A Motion to Dismiss is not proper to challenge the facts as that is what
response briefs do. However, Appellee cannot, and did not, raise any dispute
with the Facts of Appellant's Motion to Enjoin and Declaration, Docs. 604,605,
and has no standing to make such objection in this Appellate Court.

Under Federal Rules of Criminal Procedure Rule 12(b), a Motion to Dismiss
is timely for lack of jurisdiction while the case is pending. The Frauds Upon
the Court were not fully detected, or ripe, until now, and the effect of the
Frauds upon the Court have far reaching implications nunc pro tunc.

Under Local Rule 47.6 Appellee had 7 days to oppose Appellant's Motion to
Enjoin and failed to log any objection to the facts.

Appellee seems to argue that Judge Friot's orders on January 28, 2010,

27

and February 22, 2010, Doc.s 293 at 12, and 312 at 2, See Motion at 5, when
the Frauds Upon the Court were having their way in the judicial machinery and
judicial process, and at a time Woodward, Snoke, and O'Reilly, disguised the
fact the each had no Article III, § 2 standing, no Article II, § 2, Cl.2
inferior office appointment, and thus the Court lacked Article III, § 2, Jud-
icial Power and Jurisdiction, that "the district court rejected this same
argument years ago." Motion at 5

Disputing facts, and disputing argument, are totally different disputes.
Appellant argues that the January 28, 2010 order, Doc. 293, pg. 12, that Judge
Friot held "[T]he appointment of a previously acting United States Attorney, as
a United States Attorney, does not compromise the United States' ability to
prosecute this action," is not clear error "in rejecting his factual claims."

Judge Friot was not rejecting Appellant's pre-fraud upon the Court factual
claims. Judge Friot was clearly saying that merely showing Woodward had been
appointed by the Attorney General, as the Northern District of Oklahoma's United
States Attorney, pursuant to 28 U.S.C. § 546(a), which is one of the frauds upon
the Court that Appellee did not, and cannot, dispute, that had an appointment
actually been made by Mr. Holder, as Woodward, Snoke, and O'Reilly declared on
January 27, 2010 (just 1 day earlier), see Doc. 292, note 1, does not compromise
the "United States' ability to prosecute this action." Doc. 293, pg. 12.

The record is clear Woodward was never authorized to be "Acting United
States Attorney" under 5 U.S.C. § 3345(a)(1), and never qualified, or was
O'Meilia's "First Assistant" under § 3345(a)(1) between March 3, 2009 to June
28, 2009. Appellant showed in his Motion to Enjoin and Declaration, Doc. 604,
605, that Woodward received no appointment from Mr. Holder, on or after Jan-
uary 23, 2009, pursuant to 28 U.S.C. § 542(a) and Article II, § 2, Cl.2. Open-
ing Brief at 4-6, and 35-37.

The only record even mentioning Woodward is the May 25, 2010 oath Wood-
ward signed after Judge Eagan entered an order under 28 U.S.C. § 546(d)
appointing Woodward as the Northern District of Oklahoma' s United States
Attorney. Doc. 604, pg. 6-7 and Doc. 605, pg. 3-4 and Exhibit 9, pg. 4 of 4.

A May 25, 2010 oath, required by 28 U.S.C. § 544, does not begin to show
Woodward was appointed as an Assistant United States Attorney for the Northern
District of Oklahoma, between January 23, 2009 through May 24, 2010.

The facts admitted by Appellee are that Woodward never qualified as "Act-
ing United States Attorney, between June 28, 2009 through January 21, 2010. So,
Judge Friot's statement "[T]he appointment of a previously acting United States
Attorney" was premised upon fraud upon the Court that was not at issue when
Judge Friot enterd his January 28, 2010 order (Doc. 293, pg. 12).

And the phrase "as a United States Attorney" was also clearly in error
based upon the undisputed facts that Woodward, Snoke, and O'Reilly, lied to
the District Court on January 27, 2010, when they said:

"On January 21, 2010, Thomas Scott Woodward was sworn in as the Attorney
General's appointed United States Attorney for the Northern District of
Oklahoma."

Doc. 292, pg. 1 note 1.

Ms. Richardson declared under the penalty of perjury in the record of the
Northern District of Oklahoma that in her search of all the records in Williams'
agency, and the Department of Justice, she could only find an affidavit with
Woodward's name on it dated May 25, 2010. See Doc. 605, Exhibit 28, pg. 3 of 5
See Opening Brief at 6-7 ("All the records you seek are being made available to
you")("I am not aware of any other method or means by which a further search
could be conducted that would likely uncover additional responsive records.")
Opening Brief at 8, ¶ 30

Appellee argues Appellant "cannot establish that the district court

29

clearly erred, years ago, in rejecting [Appellant's] factual claims," Appellant clearly did show the district court clearly erred and those errors were premised upon the frauds upon the Court intentionally committed by Woodward, Snoke, O'Reilly, Gallant, and Williams.

The sentence in Doc. 293, pg. 12 that Appellee relies could not ever have been written had it not been for the frauds surrounding Woodward's nonexistent appointments caused deliberately by the President and Mr. Holder when Oklahoma's two Republican Senators were unwilling to agree to those President Obama put forth for the offices.

Lastly, Appellee's argument regarding Judge Friot's statement in Doc. 312, pg. 2 is just as based upon the frauds upon the Court as the previous sentence from Doc. 293, pg. 12. Appellee argues that Appellant should not "be able to challenge the authority of a prosecution team, for the first time, only after the defendant's conviction." Motion at 5

Appellee is arguing that no matter the fraud upon the Court involving the lack of any constitutional or statutory authority to represent the United States of America, that if that fraud can go undetected through jury trial, then the fraud's success is unreviewable.

Such an argument is ridiculous and one you would expect from a party who is unwilling to utter a single word in rebuttal, or offer any evidence, to rebut, the clear evidence of frauds upon the Court.

Fortunately, for the Rule of Law, Appellee's argument that orders and judgments procured by frauds upon the Court, including fraud as to the Court's jurisdiction, should not be desturbable after a Jury Trial conducted with active employment of such frauds, has been rejected by every court in the Republic.

The challenges to the "prosecution team" to which Judge Friot was addressing, are not the claims levied by Appellant in his Motion to Enjoin after obtaining the evidence of such frauds.

30

At no time did Judge Friot consider that Woodward held no appointment as an Assistant United States Attorney, or the reasons why Mr. Holder refused to make any such appointments for the Northern District of Oklahoma. Judge Friot was not addressing the fact Woodward was not O'Meilia's First Assistant uner 5 U.S.C. § 3345(a)(1) and thus did not qualify as Acting United States Attorney under § 3345(a)(1). Judge Friot's order was based upon his accepting the fraudulent representations by Woodward, Snoke, and O'Reilly, that were totally false.

Since Appellee cannot and did not dispute the facts asserted in Appellant's Motion to Enjoin and Declaration, and cannot dispute them in this Court, Appellee's argument that it may hide behind Judge Friot's January 28, 2010 and February 22, 2010 orders, which are entered and based upon those same frauds, is not what the rule of equity affords. The frauds upon the Court must be erradicated from the record.

This case is not just about Appellant's case, but is also about Article II, § 2, Cl. 2, Article III, § 2, and the rules of law developed over 200 years upon these Articles that these named lawyers used fraud to violate.

In U.S. v. Buck, 281 F.3d 1336, 1342(10th Cir. 2002) the Tenth Circuit held "[T]here is no time limit for such proceedings, nor does the doctrine of laches apply." "It would defile the equitable foundations of the doctrine of res judicata to suggest that a fraudulently obtained judgment must be entitled to preclusive effect in the very court where the fraud was perpetrated, and thereby prevent litigation on the fraud issue." United Business, 591 F. Supp. at 1183.

Appellant's undisputed claims of frauds upon the Court are timely and not frivolous as to the legal arugments. See Opening Brief at 21 to 49.

The Motion to Dismiss should be denied.

31

e. Appellant's legal arugment logically flowing from the frauds upon the Court is not frivolous.

Appellant simply argues that where Woodward was not an appointed Assistant United States Attorney, pursuant to Article II, § 2, Cl. 2 and 28 U.S.C. § 542(a), between January 23, 2009 to June 28, 2009, and was not O'Meilia's "First Assistant" under 5 U.S.C. § 3345(a)(1) between March 3, 2009 to June 28, 2009, and was prohibited from being "Acting United States Attorney" between June 28, 2009 to January 21, 2010, under § 3345(a)(1).

The D.C. Circuit recently reversed decisions in S.W.Gen. v. NLRB, 796, F.3d 67, 69(D.C. Cir. 2015) where the "Acting" General Counsel did not qualify for authorization under 5 U.S.C. § 3345(a)(1). "Actions taken by persons serving in violation of the [Federal Vacancies Reform Act of 1998][are] void ab initio." Id. citing 5 U.S.C. § 3348(d)(1) and (2).

Everything done through, or relied upon by, Woodward, as either Assistant United States Attorney, or Acting United States Attorney, under 5 U.S.C. § 3345(a)(1) is void ab initio (from the beginning of his frauds). Everything done by Woodward as "United States Attorney," after January 21, 2010 to May 25, 2010, is also void due to Woodward having never received any appointment as United States Attorney by Mr. Holder, pursuant to 28 U.S.C. § 546(a) and (c)- (2). See Throckmorton, 98 U.S. at 65-66.

Between pages 24 to 28 of Appellant's Opening Brief Appellant set forth in detail his argument that where Woodward, Snoke, and O'Reilly, held none of the appointments to office they proclaimed they held, that the District Court either never obtained, or lost, Article III, § 2 Judicial Power and jurisdiction upon the revelation O'Meilia's resignation on June 28, 2009.

Appellant cannot give Article III§ 2 Judicial Power and jurisdiction the Constitution and Congress withheld.

## CONCLUSION

Appellant requests this Court to deny the Motion to Dismiss for the
reasons stated above and herein and in Appellant's Opening Brief. This Court
should not allow Appellee to use the Motion to Dismiss procedure in the manner
they have done here as Appellee is simply hiding the frauds upon the Court
behind another procedure. Appellant requests this Court to order Appellee
to file an answer brief addressing the merits of this appeal or find Appellee
waives their right to file any response brief.

Respectfully Submitted,

Reg. # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

## ORAL ARGUMENT

Appellant respectfully requests oral argument on Appellee's Motion to

Dismiss if it is not denied or dismissed for the reasons stated herein.

CERTIFICATE OF SERVICE

I hereby certify that on February $\underline{4}$ , 2016, I mailed by U.S. Mail

First Class Appellant's Response in Opposition to Appellee's Motion to

Dismiss, to the Clerk of Court, 1823 Stout Street, Denver, Colorado 80257;

I further certify that the following parties are registered ECF users

with the Tenth Circuit Court of Appeals and shall receive service of the

above Response to Appellee's Motion to Dismiss through the Court's ECF

system:

United States of America
Frank Phillip Cihlar
Gregory Victor Davis
Alexander Patrick Robbins

Acting Assistant Attorney General Caroline D. Ciraolo
Acting Chief, Criminal Appeals, Tax Division S. Robert Lyons

_____
Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1),

under the laws of the United States of America, that on February $\underline{4}$ , 2016,

I deposited the above Response to Appellee's Motion to Dismiss in the U.S.

Mailbox located inside FSL La Tuna to the address of the Clerk listed above.

_____
Declarant

34

Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

MON 08 FEB 2016 PM

Scanned by
US Marshal

"Legal Mail"

⇔02580-063⇔
Clerk Of Court-Tenth circuit
U.S. Court of Appeals
1823 Stout ST
Denver, CO 80257
United States